**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

SOARING WIND ENERGY, LLC, TANG ENERGY
GROUP, LTD., THE NOLAN GROUP, INC., Keith P.
Young, Mitchell W. Carter and JAN FAMILY
INTERESTS, LTD,

      Movants,

v.

                                      Civil Action No. 3:15-CV-04033

CATIC USA, INC. *a.k.a.* AVIC INTERNATIONAL
USA, INC., AVIATION INDUSTRY CORPORATION
OF CHINA, CHINA AVIATION INDUSTRY GENERAL
AIRCRAFT, CO., LTD., AVIC INTERNATIONAL
HOLDING CORPORATION, AVIC INTERNATIONAL
RENEWABLE ENERGY CORP., and CATIC T.E.D.,
LTD. *a.k.a.* AVIC INTERNATIONAL, T.E.D. LTD.,

      Respondents.

**MOTION TO CONFIRM ARBITRATION AWARD**
**AGAINST RESPONDENT AVIC INTERNATIONAL USA, INC.**
*and*
**MOTION TO CONFIRM ARBITRATION AWARD**
**AGAINST ALL OTHER RESPONDENTS**

TO THE HONORABLE JUDGE OF SAID COURT:

      BASED UPON THE AWARD OF THE ARBITRATORS, Movants request that the

Court confirm the attached arbitration award and

- enter it as a judgment against Respondents in the total amount of over $70,000,000.00 *plus*

  accruing attorneys' fees and post-award interest at 5.0% (over $10,000.00 per day) and

- declare the AVIATION INDUSTRY CORPORATION OF CHINA ("**AVIC**") is liable for the debts of

  its nominal "subsidiaries" because that are, in fact, all one entity.

        *Based on AVIC's own accounts of its own policies and activities, it operates as a*
        *single unified entity.  To suggest otherwise would be intellectually dishonest.*

                                Prof. David Jacobson
                                UNC KENAN-FLAGLER SCHOOL OF BUSINESS

COMES NOW SOARING WIND ENERGY, LLC ("Soaring Wind"), TANG ENERGY GROUP, LTD. ("Tang"), THE NOLAN GROUP, INC. ("Nolan"), Keith P. Young, Mitchell W. Carter, and JAN FAMILY INTERESTS, LTD. ("JFI") (collectively "Movants"), and respectfully move this Court to confirm as a judgment of this Court the arbitration award issued by the INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION ("ICDR") and the AMERICAN ARBITRATION ASSOCIATION ("AAA"), which award is referenced below, *plus* post-judgment interest and attorneys' fees.[1]

## JURISDICTION

1.      Jurisdiction in the Federal District Court is proper because there is complete diversity between all Movants and all Respondents.  Respondents can be served at the addresses indicated on the *Certificate of Service* below.

## VENUE

2.      Venue is proper in the Northern District of Texas, Dallas Division, because the award in question was entered in Dallas, Texas.

## INTRODUCTION

3.      AVIC promised five Texas developers it would provide funding for commercial wind power projects, but never funded a single project.  Worse, AVIC provided funding for a different developer to complete a project the Texans had presented.

4.      A year earlier, AVIC had partnered with those developers to start a global wind energy business called SOARING WIND ENERGY, LLC ("Soaring Wind"), promising it would not compete against that company.  Just over two years later, AVIC started a new unit to compete with Soaring Wind and redirected to the new unit the cash it had committed to Soaring Wind.

---

[1]   When the arbitration was initiated, the AAA assigned it case number **01-14-0000-6808**.  When the case was transferred, the ICDR assigned it case number **01-14-0001-4150**.  Although the Panel entered orders under the AAA number, this Court should find all orders to have been entered under the same proceeding, regardless of which of the two referenced case numbers was used.

5.      Movants brought claims against AVIC and six of its nominal subsidiaries, namely CATIC USA, INC. *a.k.a.* AVIC INTERNATIONAL USA, INC. ("**AVIC USA**"), CHINA AVIATION INDUSTRY GENERAL AIRCRAFT, CO., LTD. ("**CAIGA**"), AVIC INTERNATIONAL HOLDING CORPORATION ("**AVIC IHC**"), AVIC INTERNATIONAL RENEWABLE ENERGY CORP. ("**AVIC IRE**"), ASCENDANT RENEWABLE ENERGY, CORP. ("**Ascendant**"), and CATIC T.E.D., LTD. *a.k.a.* AVIC INTERNATIONAL, T.E.D., LTD. ("**AVIC TED**"), collectively the "Respondents."  Movants also brought claims against Paul E. Thompson, an officer of Soaring Wind who was provided with an interest (with no investment required) but who betrayed his company and provided assistance to the Chinese entities developing a wind project in Texas without Soaring Wind. Movants file this motion to confirm the award against the Chinese Respondents referenced above, but seek no judgment against Ascendant [2] or Thompson [3] at this time.

6.      Respondents' promises were made in writing, and the evidence of breach was largely undisputed.  The pivotal question was whether the entity that made those promises was the same entity that broke them.  The arbitrators answered that question "yes," AVIC is one entity.

7.      The Panel analyzed the evidence against the 21 factors prescribed by the Fifth Circuit.[4] This Court may now independently review the evidence supporting the Panel's findings of alter ego liability against AVIC, CAIGA, AVIC IHC, AVIC IRE and AVIC TED.

## ARBITRATION AGREEMENT

8.      Movants and Respondents entered into a valid arbitration agreement as part of the *Company Agreement for Soaring Wind Energy, LLC* ("the SWE Agreement"), attached as **Exhibit B**.  The arbitration provision is Chapter XIII, which begins at page 46. (App. p. 052.)

---

[2]   The Honorable Ed Kinkeade has previously ruled that Ascendant was exempt from the jurisdiction of the Panel by virtue of its attempt to seek judicial intervention.  Movants respectfully object to that rulings, but exclude Ascendant from this proceeding, notwithstanding the Panel's determination that Ascendant misled the Court.
[3]   Thompson claimed the arbitration was so stressful that he required medical attention, so he is not included.
[4]   See *Bridas S.A.P.I.C v. Gov't of Turkmenistan*, 447 F.3d 411, 418, (5th Cir. 2006), also known as *Bridas II*.

9.      Paragraph 13.3(i) of the SWE Agreement provides that –

> Any decision by a majority of the Arbitrators shall be final, binding and non-appealable.  Any such decision may be filed in any court of competent jurisdiction and may be enforced by any Disputing Member as a final judgment in such court.  There shall be no grounds for appeal of any arbitration award hereunder.

## HEARING AND AWARD

10.     After 18 months and a 5-day final hearing, the Panel issued a *Final Award* ("the Award")

including detailed findings and conclusions.  A copy of the Award is attached as **Exhibit R**.

## PROCEDURAL SUMMARY

### *Clear Arbitrator Selection Procedure Followed Without a Lapse*

11.     Tang initiated the arbitration on June 13, 2014. With no lapse in the process, all parties

appointed an arbitrator pursuant to their agreement, then these Respondents filed two lawsuits to

complain about the arbitrator-selection process.[5]  AVIC USA filed one suit in this district, which

Hon. Ed Kinkeade dismissed (affirmed by the Fifth Circuit), and filed the other (now moot) in

Delaware.  Respondents objected that each member of the LLC involved in a dispute could

appoint an impartial arbitrator.  In *dicta*, the Fifth Circuit has already blessed the procedure

followed by the parties, characterizing AVIC's transparent suit as an attempt to get the Court to

"rewrite" the parties' arbitration agreement.[6]

### *Notice of Arbitration Proceedings to All Respondents*

12.     All Respondents have "due notice" of the claims against them as that term is used by the

AAA Commercial Rules.[7]  Indeed, all Respondents filed objections with the AAA and the

ICDR.[8]

---

[5]   Another was filed by Ascendant and misrepresented that it was not participating in the arbitration.
[6]   See **Exhibit C**, App. 68-70.
[7]   AAA Commercial Rule No. 31: "[T]he arbitration may proceed in the absence of any party or representative who, after due notice, fails to be present or fails to obtain a postponement."  The SWE Agreement provides for arbitration pursuant to the AAA Commercial Rules (**Ex. B**, §13.3, App. 052-054)).

*Notices of Non-Participation and its Consequences*

13.     Six of the Respondents represented that they would not participate.[9]   That strategic decision conflicts with the AAA Commercial Rules, which allow evidence to be taken and a ruling made against a party who fails to appear at a final hearing.[10]   The ICDR administrator, Mr. Christian Alberti, explicitly warned Respondents of that danger on October 9, 2014.[11]   In addition, Tang filed an *Objection to Notice of Non-Participation and Notice of Intent to Proceed*,[12] again warning Respondents of the danger posed by their Hail-Mary litigation strategy.

*Participation by all Respondents*

14.     If, in fact, non-participation was ever their strategy, it was short-lived.  For example, all Respondents immediately asserted objections in the arbitration to the arbitrator-selection provisions of the SWE Agreement.  AVIC and CAIGA actually offered evidence in support of those objections directly to the Panel, and sought and obtained from the AAA relief in the form of (1) a review of their complaints by the AAA's ADMINISTRATIVE REVIEW COUNCIL and (2) administration of this matter through the ICDR.[13]   In March 2015, all Respondents objected to and denied requests for admissions.  At the arbitration trial, counsel for the alter ego respondents cross-examined witnesses for the benefit of those entities. The Panel found that "the non-signatories participated."   In fact, it is undisputed that counsel for AVIC and CAIGA wrote the appellate brief for AVIC USA in the Fifth Circuit case to which neither AVIC nor CAIGA were named as parties.

---

[8]   See list of objections asserted by Respondents and ruled upon by the Panel in the *Final Award*, **Ex. J**.
[9]   See *NovaTel Ltd., Inc. v. Dhanus Technologies, Ltd.,* 2012 WL 12324818 (U.S.D.C. West. Dist. Tx., 2012) in which a District Court confirmed an award against a non-participant who had due notice of arbitration proceedings.
[10]   AAA Commercial Rule No. 31.
[11]   **Exhibit D**, App. 071-073.
[12]   See **Exhibit F-2**, App. 108-111.   This filing reiterated warnings that Tang previously made on September 12, 2014.  See **Exhibit F-1**, App. 104-107.
[13]   See *Objections of Aviation Industry Corporation of China and China Aviation Industry General Aircraft Co., Ltd. to Demand for Arbitration and Joinders*, filed August 5, 2014, **Ex. I**, App. 114-161.

*Comprehensive Discovery and Orders Disregarded*

15.     The Panel permitted extensive discovery, including depositions and written discovery, but the alter ego Respondents disregarded all of Movants' discovery requests and at least four Orders issued by the Panel. In violation of those Orders, Respondents boldly refused to provide extensive information and multiple witnesses.  Movants were forced to rely on what evidence they already had and that which was publicly discoverable.

### SUBSTANTIAL AWARD IN FAVOR OR MOVANTS

16.     After considering the evidence and post-hearing briefs, the Panel, issued its *Final Award* on December 21, 2015.  The Award includes careful *Findings of Fact* and *Conclusions of Law,* and awards Movants a total of over $70,000,000.00 including attorneys' fees, costs and pre-award interest.  The Panel also divested Thompson and AVIC USA of their interests in Soaring Wind.

# MOTION TO CONFIRM ARBITRATION AWARD
# AGAINST RESPONDENT AVIC INTERNATIONAL USA, INC.

Movants file this *Motion to Confirm Arbitration Award Against Respondent AVIC International USA, Inc.* and would show that AVIC USA has no defenses and no right to appeal.

# MOTION TO CONFIRM ARBITRATION AWARD
# AGAINST ALL OTHER RESPONDENTS

Movants file this *Motion to Confirm Arbitration Award Against All Other Respondents* and, in support, would show that, in addition to the grounds applicable to AVIC USA, there is no legal basis for vacating, modifying or correcting the Award.

### STANDARD OF REVIEW

17.     The Court's review of the arbitration process generally is severely limited.  On a timely filed motion to confirm an arbitration award with the proper attachments, confirmation of the

award is *presumed* unless there are grounds to modify, correct, or vacate the award.[14]   No Respondent has moved to modify, correct or vacate the Award, and the parties agreed there would be no appeal from an award.   Specifically, paragraph 13.3(i) of the SWE Agreement provides, "[a]ny decision by a majority of the Arbitrators shall be final, binding and non-appealable," and "[t]here shall be no grounds for appeal of any arbitration award hereunder." [15]

18.      Even if appealed, the deferential standard applies to the liability and damages facts and to all conclusions which the Panel reached pertaining to the signatory, AVIC USA.   There is, however, one discreet aspect of the Award for which the law allows a different standard of review – the Panel's alter ego jurisdiction over the alleged "non-signatories."   Notwithstanding overwhelming evidence and the decision of a distinguished panel of nine (9) arbitrators,[16] Movant's concede Respondents are still entitled to have this Court conduct an "independent review" of that evidence to confirm the liability of the nominal non-signatories.[17]   Specifically, the Court's attention is drawn to the section of the Award pertaining to alter ego and "the *Bridas* Factors."    (**Ex. R**).   For many pages, the Panel specifically references the evidence it found determinative and which this Court must now review.

## SPECIFIC LEGAL CHALLENGE:

**When (1) the parties agree their arbitrators will decide jurisdiction, *and*
(2) the claimants join nominal "non-signatories" based on alter ego, *and*
(3) those "non-signatories" object but (4) seek no judicial intervention,
then can the panel hear evidence and decide jurisdiction over those parties
*<u>subject to an independent judicial review</u>*?**

---

[14]   See *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36-38 (1987) and 9 U.S.C. §§ 9, 13; *see Booth v. Hume Publ'g, Inc.*, 902 F.2d 925, 932 (11th Cir. 1990).

[15]   SWE Agreement, **Ex. B**, §13.3(i), App. 054.

[16]   The Panel was chaired by Mr. **Steven Aldous** and included Hon. **Glen Ashworth**, Hon. **Jeff Kaplan**, Hon. **John Marshall**, Hon. **Mark Whittington**, Mr. **Joseph Byrne**, Mr. **Richard Capshaw**, Mr. **Gregory Shamoun** and Mr. **William Toles**.

[17]   *First Options v. Kaplan,* 514 U.S. 938, 947 (1995) and *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 354 (5th Cir. 2003).

**ANSWER:**

**Yes.  It is the only way to protect the rights of all parties.**

### *Alter Ego Jurisdiction*

19.     Although courts generally determine matters of jurisdiction, that presumption is rebutted when, as here, the parties clearly and unmistakably agree the arbitrators will make those determinations.[18]

20.     Paragraph 13.3(e) of the SWE Agreement incorporates the AAA Commercial Rules:

> *Except as expressly provided in this Article XIII, arbitration shall be conducted in accordance with the Commercial Arbitration Rules and procedures of the AAA.*

21.     AAA Commercial Rule 7(a) authorizes the panel to make jurisdictional determinations:

> *The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.*

22.     Courts agree that incorporation of the AAA Commercial Rules constitutes clear and unmistakable evidence of the parties' intent to arbitrate arbitrability.[19]  "Arbitrability" includes determining whether a putative stranger to the arbitration agreement must fairly be considered the alter ego of a signatory.[20]  Based on unassailable precedent from the FIFTH CIRCUIT COURT OF APPEALS and the SUPREME COURT OF THE UNITED STATES, including cases where the courts

---

[18]   *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415 (1986).

[19]   *Petrofac Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (emphasis supplied); *Fallo v. High–Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) ("[W]e conclude that the arbitration provision's incorporation of the AAA Rules ... constitutes a clear and unmistakable expression of the parties' intent to leave the question of arbitrability to an arbitrator."); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1372–73 (Fed. Cir. 2006) (same); *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332–33 (11th Cir. 2005) (same); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (same); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989) (same result under the similar ICC Rules). But see *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 780 (10th Cir. 1998).

[20]   *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347 (5th Cir. 2003), also known as "*Bridas I*," and *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411 (5th Cir. 2006), also known as "*Bridas II*"; *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1520 (3d Cir. 1994) (emphasis added), aff'd at 129 S.Ct. 1896 (1995).

independently reviewed evidence of alter ego and found it sufficient (as in *Bridas*) and insufficient (as in *Kaplan*), the Panel had the legal authority to make initial alter ego findings and conclusions regarding the alter ego liability of alleged "non-signatories." [21]

23.     The Supreme Court has established that non-signatories can by bound to arbitration agreements under a number of state contract law theories, including alter ego,[22] and the Fifth Circuit has followed suit.[23]   Movants proved that AVIC so extensively controls its subsidiaries that they act as one entity, and that the recognition of the corporate form would work a fraud or injustice against Movants.[24]

### The Right Public Policy

24.     The Court must balance two competing interests when a claimant seeks to hold a party to an agreement signed by its putative alter ego.   First, parties have a right to arbitrate against the actual parties who agreed to arbitrate with them.   By definition, that right would include arbitrating against alter egos.   Second, however, a stranger who is ***not*** the alter ego of a party, has the right ***not*** to be bound by someone else's agreement.   The determination of whether the "non-signatory" is an alter ego or a stranger turns of the unique evidence of a case, not on a point of law.   The rights of all parties are protected, therefore, if the arbitrators evaluate and decide upon the evidence, and those conclusions are independently reviewed by a court.[25]

### Alter Ego Liability

25.     As established by the evidence this Court will review, there is no genuine dispute that AVIC so completely dominates its nominal subsidiaries that they can only fairly be regarded as

---

[21]   See *id.*

[22]   *Arthur Andersen LLP v. Carlisle*, 521 F.3d 597, 129 S.Ct. 1896, 1902 (U.S. 2009) (quoting 21 R. Lord, Williston on Contracts § 57:19, p. 183 (4th ed. 2001)).

[23]   *Graves v. BP America, Inc.*, 568 F.3d 221, 223 (5th Cir. 2009) (reversing trial court's denial of motion to compel arbitration) (citing *Sherer v. Green Tree Servicing, LLC*, 548 F.3d 379, 381-82 (5th Cir. 2008)).

[24]   *U.S. Fidelity & Guar. Co. v. Braspetro Oil Services, Co.*, 199 F.3d 94 (2d Cir. 1999).

[25]   That is precisely the solution urged by *Kaplan* and both *Bridas* decisions.

one entity.  That evidence ranges from scholarly observations to statements against interest on AVIC websites to the recorded words of AVIC officers and counsel and to positions AVIC has taken in at least one other United States District Court.  The Award specifically recounts the evidence offered in support of each of the 21 factors identified by the Fifth Circuit for assessing the control exercised by a parent over a "subsidiary."

26.    Movants also demonstrated, not only that AVIC dominates its "subsidiaries," but that Movants were the victims of profound injustice as a result of that domination.  Indeed, the same AVIC officer who first signed a promise not to compete against Soaring Wind later accepted the appointment as Chairman of the new AVIC unit established for the purpose of competing.

## NO BASIS FOR MODIFICATION

27.    There are no grounds for modifying, correcting, or vacating the award,[26] and the Panel's decisions are correct.  The Award is supported by extensive findings and conclusions.

28.    Here, all parties agreed the "decision … of the Arbitrators shall be final, binding and non-appealable" and "[t]here shall be no grounds for appeal of any arbitration award hereunder."[27]

## CONCLUSION AND PRAYER

29.    Because the motion is proper; there are no grounds for modifying or vacating the award and because AVIC USA has no defenses and no right to appeal, the Court should promptly confirm the Award against the undisputed signatory.

30.    Further, the Court should independently review the compelling alter ego evidence presented to the Panel and then grant the motion against the alter ego Respondents and confirm the entire Award as a judgment of this Court.[28]

---

[26] 9 U.S.C. § 9.
[27] *SWE Agreement,* **Ex. B**, *§13.3(i), App. 054.*
[28] 9 U.S.C. §§ 9, 13.

Respectfully Submitted,

VINCENT LOPEZ SERAFINO & JENEVEIN, PC

/s/ Robert C. Jenevein
By Robert C. Jenevein
SBN 10617430
bjenevein@vilolaw.com
Brent A. Turman
bturman@vilolaw.com
SBN 24077506
THANKSGIVING TOWER, 41st Floor
1601 Elm Street, #4100
Dallas, Texas 75205
Ph: 214-979-7400
Fx: 214-979-7402

Jim Moseley
Texas State Bar No. 14569100
jmoseley@grayreed.com
GRAY REED & MCGRAW, PC
THANKSGIVING TOWER, 46th Floor
1601 Elm Street, Suite 4600
Dallas, Texas 75201
(214) 954-4135 – Telephone
(214) 953-1332 – Facsimile

Counsel for TANG ENERGY GROUP, LTD. and
SOARING WIND ENERGY, LLC.

MUNSCH HARDT KOPF & HARR, P.C.

/s/ Deborah M. Perry
Deborah M. Perry
Texas Bar No. 24002755
E-mail: dperry@munsch.com
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659
Phone: 214-855-7500
Fax: 214-855-7584

Counsel for THE NOLAN GROUP, INC.

**BELL NUNNALLY & MARTIN LLP**

*/s/ Jeffrey S. Lowenstein*
Jeffrey S. Lowenstein
jeffl@bellnunnally.com
Texas Bar No. 24007574
Jesse A. Okiror
jesseo@bellnunnally.com
Texas Bar No. 24068543
1400 One McKinney Plaza
3232 McKinney Avenue
Dallas, Texas 75204-2429
Tel. (214) 740-1400
Fax (214) 740-1499

Counsel for Keith P. Young


**SCHEEF & STONE, LLP**

By: */s/ Brandi J McKay*
Matthew T. Bracy
State Bar No. 00783699
matt. bracy@solidcounsel.com
Brandi J. McKay
State Bar No. 20503175
brandi.mckay@solidcounsel.com
2600 Network Blvd., Suite 400
Frisco, Texas 75304
Telephone: 214.472.2100
Facsimile: 214.4 72.2150

Counsel for JAN FAMILY INTERESTS, LTD.

THE LAW OFFICES OF DAVID T. DENNEY, PC

By:/s/ *Ashley N. Ahn*
David T. Denney
Texas State Bar No. 24032128
david@denneylaw.com
Ashley N. Ahn
Texas State Bar No. 24050969
ashley@denneylaw.com
8350 N. Central Expressway, Suite 925
Dallas, TX 75206
(214) 739-2900- Telephone
(214) 739-2909- Facsimile

Counsel for MITCHELL W. CARTER

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that, in accordance with AAA Commercial Rule 43(a), a true and correct copy of the foregoing document has been served upon all Respondents' counsel via certified mail, facsimile and email on this 21st day of December 2015.  This service includes attorneys who represented Defendants in the arbitration, as well as Civil Action No. 3:14-cv-03314-K and 3:14-cv-02815-K, which are both pending in the Honorable Ed Kinkeade's Court.

Additionally, Movants will seek a *Waiver of Service of Summons* from Respondents.

In the event Respondents decline to execute a waiver, Movants will arrange to serve the Respondents a copy of the foregoing document and this Court's summons as set forth below.  As to the Chinese entities, Movants will arrange for service, pursuant to The Hague, upon the Ministry of Justice, International Legal Cooperation Center, 6 Chaoyangment Nandajie, Chaoyang District, Beijing, P.C. 100020, People's Republic of China, which serves as China's designated Central Authority and agent for service of foreign judicial documents in civil and commercial matters.

In the event the Chinese authorities refuse to serve Respondents with the motion to confirm and the summons, then Movants will apply to the Court for alternative service.

/s/ *Robert C. Jenevein*
Robert Jenevein
Counsel for movants TANG ENERGY GROUP, LTD.
and SOARING WIND ENERGY, LLC

| Respondent | Address for Service |
|---|---|
| AVIC International USA, Inc. | **Mr. Sherman Zhang**, President, or **Mr. Roger Zhao,** Vice President, AVIC International USA, Inc. 1623 W. Second Street Pomona, CA 91766 Fax: 909-865-8881 zhangxm63@hotmail.com |
| Aviation Industry Corporation of China ("AVIC") | **Mr. Lin Zuoming**, Chairman, or **Mr. Geng Ruguang**, Executive Vice President Aviation Industry Corporation of China AVIC Plaza No. 128 Jian Guo Road Chaoyang District, P.O. Box 2399 Beijing [29] Post Code: 100022 |

---

[29]   Per AVIC filings in Michigan, Case 2:12-cv-11144-SJM-MKM, Doc 36-3, filed Oct. 30, 2013, p. 4/4, PageID 587.

|  | Fax: (86-10) 5835-5979<br>Gengrg@avic.com.cn |
| --- | --- |
| China Aviation Industry General Aircraft, Co., Ltd. ("CAIGA") | **Mr. Wang Bin**, Chairman, or<br>**Mr. Qu Jingwen**, President, or<br>**Mr. Bian Tao**, Vice President,<br>CAIGA<br>1519 Yinwan Road<br>Xiangzhou District<br>Zhuhai, 519030<br>China<br>Fax: +86 75 6768 8018<br>biantao@catic.cn |
| AVIC International Holding Corporation ("AVIC IHC") | **Mr. Jiang Wei**, Deputy Party Secretary, or<br>**Mr. Pan Linwu**,  CFO,<br>AVIC International Holding Corporation<br>CATIC Plaza<br>No. 18 Beichen East Road<br>Chaoyang District<br>Beijing 100101, China<br>jiangwei@catic.cn<br>plw@avic-intl.cn<br>Fax: (86-10) 8497-1088 |
| AVIC International Renewable Energy Corp. ("AVIC IRE") | **Ms. Wu Lili**, Chief Executive Officer, or<br>**Mr. Xu Hang**, Vice President,<br>AVIC International Renewable Energy Corp.<br>20th Floor, Tower B of Grand Place<br>No. 5 Huizhong St.<br>Chaoyang District<br>Beijing 100101, China [30]<br>Fax: (86-10) 8489-1714<br>xuhang@catic-ted.com<br>xuhang@avic-energy.com<br>halleyxu1972@gmail.com |
| AVIC International T.E.D., Ltd. ("AVIC TED") | **Ms. Ye Shudong,** Deputy Director, or<br>**Mr. Zheng Qiyuan**, President,<br>CATIC T.E.D. Ltd.<br>20th Floor, Tower B of Grand Place<br>No. 5 Huizhong St.<br>Chaoyang District<br>Beijing 100101, China<br>Fax: (86-10) 5190-9681<br>zhqy@catic-ted.com<br>ysd@catic-ted.com |

---

[30] Correct address as of at least December 20, 2011, the day Xu Hang signed a TURBINE SUPPLY AGREEMENT (Case 5:14-cv-00063-C, Document 1-2, filed May 1, 2014, p.4/20, PageID 21.