**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| SOARING WIND ENERGY, LLC, TANG ENERGY GROUP, LTD., THE NOLAN GROUP, INC., KEITH P. YOUNG, MITCHELL W. CARTER and JAN FAMILY INTERESTS, LTD., | § § § § § | |
| | § | |
| Movants, | § | |
| | § | |
| v. | § | |
| | § | |
| CATIC USA, INC., a.k.a. AVIC INTERNATIONAL USA, INC., AVIATION INDUSTRY CORPORATION OF CHINA, CHINA AVIATION INDUSTRY GENERAL AIRCRAFT CO., LTD., AVIC INTERNATIONAL HOLDING CORPORATION, AVIC INTERNATIONAL RENEWABLE ENERGY CORP. and CATIC T.E.D., LTD., a.k.a. AVIC INTERNATIONAL, T.E.D., LTD., | § § § § § § § § § § § § § § | Civil Action  3:15-CV-04033-K |
| | § | |
| Respondents. | § | |

**MOTION OF NON-SIGNATORY RESPONDENTS AVIATION INDUSTRY
CORPORATION OF CHINA AND CHINA AVIATION INDUSTRY GENERAL
AIRCRAFT CO., LTD. TO LIFT STAY OF PROCEEDINGS AS TO ALL
RESPONDENTS; AND OPENING  BRIEF IN SUPPORT THEREOF**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................... 1

II.    BACKGROUND FACTS AND RELEVANT PROCEDURAL HISTORY .................... 2

III.   THE STAY MUST BE LIFTED AS TO ALL RESPONDENTS BECAUSE ANY FURTHER DELAY IN ADJUDICATING THE NON-SIGNATORY RESPONDENTS' MOTIONS TO VACATE WILL BE HIGHLY PREJUDICIAL ................................................................................................................ 6

    A.    Due Process Requires that the AVIC USA Motions and the Non-Signatory Respondents' Motions Be Decided Together, and that the Non-Signatory Respondents Participate Fully in All Motions at This Time.................................. 6

    B.    Claimants' Scheme to Assert a Separate AVIC USA Ruling as "Law of the Case" Against the Non-Signatory Respondents Would Be Highly Prejudicial ............................................................................................................ 8

    C.    The Non-Signatory Respondents Are Harmed by the Invalid and Derogatory Findings of the Award Every Day that the Award Is Allowed to Stand ............................................................................................................ 11

    D.    Claimants Are Compounding the Harm of the Award by Misrepresenting Its Contents and Effect .......................................................................................... 12

        1.    Mr. Jenevein Misrepresented the Award to the United States Congressional  Commission for U.S.-China Economic and Security Review ................................................................................ 12

        2.    Mr. Jenevein Misrepresented the Award in a Podcast Interview for the Council on Foreign Relations ............................................ 15

        3.    Claimants Have Misrepresented the Award in Press Releases and News Stories Read Around the World.................................... 16

    E.    The Non-Signatory Respondents Will Be Prejudiced if They Are Forced to Defend an Enforcement Action Without Being Heard on the AVIC USA and Non-Signatory Respondents Motions ......................................................... 16

IV.   CLAIMANTS' REQUEST FOR A CONTINUED STAY AS TO THE NON-SIGNATORY RESPONDENTS AMOUNTS TO A DE FACTO SEVERANCE. THE CIRCUMSTANCES OF THIS CASE DO NOT SATISFY THE REQUIREMENTS OF F.R.C.P. RULE 21 .................................................................. 17

V.    CONCLUSION............................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ascendant Renewable Energy Corp. v. Tang Energy Group, Ltd.*,
   2015 WL 4713240 (N.D. Tex. Aug. 4, 2015) ................................................................ *passim*

*CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*
   846 F.3d 35 (2d Cir. 2017) .................................................................................................13

*CMS Software Design Systems, Inc. v. Info Designs, Inc.*
   785 F.2d 1246 (5th Cir., 1986) ............................................................................................7

*Compania Embotelladora del Pacifico v. Pepsi Cola Co.*,
   256 F.R.D. 131 (S.D. N.Y. 2009) .....................................................................................18

*Cullen v. Paine, Webber, Jackson & Curtis, Inc.*
   863 F.2d 851 (11th Cir. 1989) ...........................................................................................17

*duPont v. Southern Nat. Bank of Houston, Tex.*
   771 F.2d 874 (5th Cir. 1985) ..............................................................................................7

*Grannis v. Ordean*,
   234 U.S. 385 (1914) ...........................................................................................................7

*Fishman Jackson PLLC v. Israely*
   180 F. Supp. 3d 476 (N.D. Tex. 2016) ...............................................................................7

*Fuller v. Interview, Inc.*
   No. 07 CIV. 5728 RJS, 2014 WL 2601376 (S.D.N.Y. May 14, 2014) ...............................15

*Hatzlachh Supply, Inc. v. Moishe's Electronics Inc.*
   848 F. Supp. 25 (S.D.N.Y. 1994) ......................................................................................13

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) ...........................................................................................................7

*Mullane v. Central Hanover Bank & Trust Co.*
   339 U.S. 306 (1950) ...........................................................................................................6

*NTCH-W. Tenn, Inc. v. ZTE USA, Inc.*,
   No. 1:11-CV-01169-JDB, 2014 WL 4444037 (W.D. Tenn. Sept. 9, 2014) ........................7

*Old Colony Ventures I, Inc. v. SMWNPF Holdings, Inc.*,
   918 F. Supp. 343 ...............................................................................................................18

*Ownbey v. Morgan*
    256 U.S. 94 (1921)...............................................................................................7

*Paragon Office Servs., LLC v. UnitedHealthcare Ins. Co., Inc.*,
    2012 WL 4442368 (N.D. Tex. Sept. 26, 2012) ....................................................18

*Soverain Software v. Amazon.com*
    356 F. Supp. 2d 660 (E.D. Tex. 2005)...................................................................7

## <u>MOTION</u>

Non-Signatory Respondents Aviation Industry Corporation of China ("AVIC") and China Aviation Industry General Aircraft Co., Ltd. ("CAIGA") file this Motion to Lift Stay of Proceedings against Non-Signatory Respondents AVIC and CAIGA.  In support of the Motion, AVIC and CAIGA respectfully show the Court as follows:

## I.       INTRODUCTION

Having engineered an unprecedented, illegal arbitration before a nine member Tribunal "stacked" with their selected arbitrators; having defied this Court by proceeding to arbitrate against the Non-Signatory Respondents who never signed the underlying contract or its arbitration agreement without first obtaining a court ruling regarding arbitrability (*Ascendant Renewable Energy Corp. v. Tang Energy Group, Ltd.*, 2015 WL 4713240 (N.D. Tex. Aug. 4, 2015)); having convinced the illegally constituted Tribunal to make findings of joint and several liability against both signatory AVIC USA and the Non-Signatory Respondents,[1] even though the Non-Signatory Respondents had not been found by the Court to be subject to arbitration and did not have the opportunity to defend on the merits or to challenge the record; having publicly sullied the reputations of the Non-Signatories by xenophobic submissions and a resulting derogatory, adverse award, as well as by Patrick Jenevein's misleading public statements about the content and effect of the Award (never revealing that he had engineered a lopsided tribunal lacking impartiality and had violated the District Court's *Ascendant* Order), Claimants now seek to isolate AVIC USA from the Non-Signatory Respondents and, ultimately to thwart this Court's review of Non-Signatory Respondents' Motions to Vacate, all to the great prejudice of all of the Respondents.

---

[1] Signatory AVIC International USA, Inc. is referred to herein as "AVIC USA" and the Non-Signatory Respondents AVIC, CAIGA, AVIC International Holding Corporation ("AVIC IHC"), and AVIC Renewable Energy Corporation ("AVIC IRE") are referred to herein as the "Non-Signatory Respondents."

Under the guise of a facially innocuous Motion to Lift Stay, Claimants seek to confirm a *de facto* severance of the motions to confirm/vacate of the Non-Signatory Respondents from the same overlapping motions as to AVIC USA with resulting extreme prejudice to AVIC, CAIGA, and the other Non-Signatory Respondents.  In doing so, Claimants' Motion to Lift Stay (1) ignores the fact that the issues raised by AVIC USA are inextricably intertwined with the issues raised by the Non-Signatories, (2) ignores the fact that the liability of AVIC USA flows from, and is derivative of, findings of purported wrongdoing by Non-Signatory Respondent AVIC IRE, (3) would result in extreme judicial inefficiency by guaranteeing duplicative litigation although all the parties have already completed briefing of the motions to confirm/vacate, (4) would result in a denial of due process to the Non-Signatory Respondents by allowing Claimants to adjudicate liability of the Non-Signatory Respondents *without their participation* and then to contend that the Non-Signatories are bound by that determination as "law of the case," (5) would expose the Non-Signatory Respondents to prejudice by the continuing existence of the unconfirmed Award, which Claimants misrepresented to a United States Congressional Commission, the Council on Foreign Relations, and in the press around the world as a final judicial determination of liability and alter ego findings against the Non-Signatory Respondents notwithstanding the many outstanding grounds for vacatur and the rule of law and due process infirmities with the arbitration process, and (6) utterly fails to satisfy the required elements for a severance under Rule 21, Fed. R. Civ. P.

For all of these reasons, the Court should lift the stay as to <u>all</u> Respondents and proceed to simultaneously decide the respective AVIC USA and Non-Signatory Respondent motions to vacate/confirm.

## II.    BACKGROUND FACTS AND RELEVANT PROCEDURAL HISTORY

The action is composed of Claimants' motions to confirm an arbitration award against Respondents (Dkt. 1, filed on December 21, 2015; Dkts. 4 -111, filed December 22-29, 2015),

and Respondents' corresponding motions to vacate the award (Dkt. Nos. 157-196, filed on March 18, 2016; AVIC and CAIGA's motion is now docketed as Dkt. 240).

Respondents completed their briefing on the merits of the respective motions when they filed their reply briefs in support of their vacatur motions on July 8, 2016. (Dkts. 293, 299, 300, 302, 305.) The final brief relating to the merits was Respondents' combined reply brief in support in support of a motion to strike certain evidence submitted by Claimants. (Dkt. 314, filed August 12, 2016.) The parties' respective motions to confirm or vacate the award, including all related evidentiary matters, were fully briefed and submitted to the Court as of August 12, 2016.

Claimants filed two successive motions requesting that the Court split Respondent AVIC USA from the Non-Signatory Respondents and decide the AVIC USA motions to confirm/vacate (the "AVIC USA Motions") first.

The first motion was filed *before* briefing on the underlying motions was completed (Motion for Scheduling Order, Dkt. 248, filed April 18, 2016). Claimants requested that the Court adopt separate briefing schedules for AVIC USA and for the Non-Signatory Respondents, such that the AVIC USA Motions would be briefed and decided first, and the motions to confirm/vacate as to the Non-Signatory Respondents (the "Non-Signatory Respondents Motions") would be briefed and decided following the rulings on the AVIC USA Motions. (Motion, Dkt. 248, at 6-7, ¶¶ 9-10). However, they did not explain (and to this day they cannot explain) how it would be possible to adjudicate AVIC's liability without also considering the alleged liability of the Non-Signatory Respondents.

The Respondents opposed the motion (Dkt. Nos. 255-259), and showed that it is *not* possible to adjudicate AVIC USA's liability without first considering the alleged liability of the Non-Signatory Respondents. AVIC and CAIGA showed that Claimants were actually seeking a "stealth severance" (Dkt. No. 259 at 8), and showed that there was no justification for a de facto severance for three primary reasons. *First*, the issues raised by all Respondents' vacatur motions were inextricably intertwined (*id*. at 5-7). *Second*, the interest of judicial economy was served by

deciding all parties' motions together (*id*. at 7).  *Third*, a severance would be "highly prejudicial" to AVIC and CAIGA for a variety of reasons, including Claimants' efforts to publicize the Award by misrepresenting its status and effect (*id*. at 7-8).  Respondents' opposition set forth the five-factor test to evaluating motions for severance and showed that they weighed overwhelmingly against Claimants' motion. (*Id*. at 8-12.)  The Non-Signatory Respondents also filed a joint sur-reply in opposition to the motion (Dkt. 262), which attached a chart showing the overlap and the inextricable intertwining of issues involving AVIC USA and the Non-Signatory Respondents (Dkt. 262, Exh. 1).

All parties completed briefing on their confirmation/vacatur motions while Claimants' scheduling-order motion was pending, *mooting* Claimants' request for separate briefing schedules.  Claimants then filed an amended scheduling order motion, renewing their request for separate decisions as to AVIC USA and the Non-Signatory Respondents notwithstanding the simultaneous completion of briefing.  (Amended Motion for Scheduling Order, Dkt. 316-2, filed Aug. 24, 2016).  Claimants' amended motion again failed to show how the Court could adjudicate AVIC USA's liability without considering the alleged liability of the Non-Signatory Respondents.  In fact, Claimants admitted that all Respondents' motions raised intertwining issues when they asserted that "if the Court were to vacate the award against AVIC USA, because the [non-signatory] Respondents have raised or incorporated the same arguments, the Court's ruling would likely dispose of the claims against all Respondents who have raised the same issue on which the court has ruled."  (*Id.* at 4.)

All Respondents filed a joint opposition to the amended motion. (Dkt. No. 321).  The joint opposition showed that Claimants were still seeking a "stealth severance" of the action (*id.*at 7).  It contended again that a de facto severance was improper because the respective parties' issues are inextricably intertwined (*id.* at 3-5), that any delay was prejudicial to the Non-Signatory Respondents because it allowed Claimants to continue their inaccurate, inflammatory and xenophobic public statements concerning the Award and the Respondents (*id.* at 7).  The

opposition showed again that the five-factor test to evaluating motions for severance and showed that they weighed overwhelmingly against Claimants' motion. (*Id.* at 7-8.)

Notably, Claimants' amended motion never sought to diminish or prevent the participation or active-party status of the Non-Signatory Respondents in any way *before* any substantive rulings as to AVIC USA.  Indeed, Claimants expressly acknowledged the Non-Signatory Respondents' direct stake in the merits of the AVIC USA Motions, since the Non-Signatory Respondents "raised or incorporated the same arguments" as AVIC USA.  (Dkt. 316-2 at 4.)  Of course, as the Non-Signatory Respondents showed in their oppositions to Claimants' scheduling order motions, they did far more than merely "raise" or "incorporate" arguments applicable to AVIC USA.  The Non-Signatory Respondents showed that AVIC USA's alleged liability is entirely dependent on invalid predicate findings of (1) arbitral jurisdiction over the Non-Signatory Respondents and (2) substantive liability of the Non-Signatory Respondents, all of which render the Award subject to vacatur as to *all* Respondents.

On September 26, 2016, the Court entered its Order staying the case as to Non-Signatory Respondents AVIC, CAIGA, AVIC IHC, and AVIC IRE "until further order of the court." (Order, Dkt. 324, filed Sept. 26, 2016).[2]  The Order also denied "as moot" Claimants' Amended Motion for Scheduling Order.  *Id.*  The Order did not state either (1) the circumstances that provided the basis for the stay, or (2) the circumstances under which the stay would be lifted.

On October 5, 2016, following the filing of a Statement Noting the Death of Keith P. Young, Jr., and Motion for Temporary Stay (Dkt. 325, filed September 30, 2016), the Court entered its order granting the motion for a temporary stay "to allow the statement noting death and a motion for substitution to be served on the personal representative of Mr. Young's estate pursuant to Rule 4."  Order, Dkt. 333, filed October 5, 2016.  The Order also required Mr. Young's counsel to file a status report with the court on or before November 15, 2016.  *Id.*.

---

[2] Non-Signatory Respondent AVIC International Trade & Economic Development, Inc. ("AVIC T.E.D.") was dismissed from the action when the Court entered an agreed order (Dkt. 315, filed on August 20, 2016) granting AVIC T.E.D.'s motion to dismiss for lack of personal jurisdiction (Dkt. 152, filed March 17, 2016).

On January 10, 2017, following a Motion for Substitution of Parties filed by Mary M. Young, individually and as the Independent Executrix of the Estate of Keith P. Young, Jr., (Dkt. 336, filed on January 4, 2017), the Court entered its order granting the motion to substitute Mrs. Young in place of her deceased husband, Mr. Young.  (Order, Dkt. 337, filed January 10, 2017). The Order did not lift the stay in this action as to any party.

On February 9, 2017, Claimants filed their Motion to Lift Stay as to Confirmation Proceedings Against AVIC International USA, Inc. (Dkt. 340, filed Feb. 9, 2017).  The Motion acknowledged that the confirmation/vacatur motions involving AVIC USA are "ripe for decision."  However, Claimants requested that the action remain stayed as to the Non-Signatory Respondents – without disputing or even acknowledging the fact that the Non-Signatory Respondents' motions are *also* ripe for decision, and without offering any explanation as to why their requested "stealth severance" was somehow appropriate. (*Id.*)

Concurrently with this Motion, AVIC and CAIGA oppose Claimants' Motion to Lift Stay (Dkt. 340) for the reasons herein.

**III.    THE STAY MUST BE LIFTED AS TO *ALL* RESPONDENTS BECAUSE ANY FURTHER DELAY IN ADJUDICATING THE NON-SIGNATORY RESPONDENTS' MOTIONS TO VACATE WILL BE HIGHLY PREJUDICIAL**

**A.    Due Process Requires that the AVIC USA Motions and the Non-Signatory Respondents' Motions Be Decided Together, and that the Non-Signatory Respondents Participate Fully in All Motions at This Time**

The Non-Signatory Respondents have a fundamental due process right to participate fully in all of the pending confirmation/vacatur proceedings and to have the AVIC USA and Non-Signatory Respondents' Motions decided together; a continued stay of the action as to the Non-Signatory Respondents that isolates AVIC USA will cause the Non-Signatory Respondents extreme and undue prejudice.

"The fundamental requisite of due process of law is the opportunity to be heard." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950), *quoting Grannis v.*

*Ordean*, 234 U.S. 385, 394 (1914).  The due process guarantee includes "the right to be heard where liberty or property is at stake in judicial proceedings."  *Ownbey v. Morgan* 256 U.S. 94, 111 (1921).  A judgment rendered against a party without its full and fair participation is a fundamental violation of that basic guarantee of due process.  *CMS Software Design Systems, Inc. v. Info Designs, Inc.*, 785 F.2d 1246, 1249 (5th Cir., 1986) (copyright owner was denied due process by dismissal that precluded it from offering rebuttal evidence on the dispositive affirmative defense; "impinging due process rights"); *duPont v. Southern Nat. Bank of Houston, Tex.*, 771 F.2d 874, 880 (5th Cir. 1985) (defendants were denied due process by an order that resolved issues without allowing presentation of evidence; "The appellants have a full and fair right to fully and fairly litigate each issue in their case."). In addition, parties to an arbitration award have the right to have their respective motions for confirmation and vacatur decided together in the interest of judicial economy.  *NTCH-W. Tenn, Inc. v. ZTE USA, Inc.*, No. 1:11-CV-01169-JDB, 2014 WL 4444037, at *3 (W.D. Tenn. Sept. 9, 2014) (holding it would "best promote[s] judicial economy and conserve[s] judicial resources" to join all parties to cross motions to confirm and vacate in order to "conclusively decide the finality of the arbitration award.")

In deciding whether to grant or continue a stay, the court must consider all of the "competing interests which will be affected by the granting or refusal of a stay."  *Fishman Jackson PLLC v. Israely*, 180 F. Supp. 3d 476, 482 (N.D. Tex. 2016) (*citing Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936), including "whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party [.]"); *Soverain Software v. Amazon.com*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005).  Here, as shown below, continuing the stay as to the Non-Signatory Respondents and isolating AVIC USA for decision on its vacatur motion will cause enormous and undue prejudice to the Non-Signatory Respondents.

*First*, Claimants' declared intent could not be more prejudicial: to obtain rulings against the Non-Signatory Respondents *in absentia* and then to assert they have preclusive effect against the Non-Signatory Respondents in future proceedings.  By this process, Claimants seek to

deprive the Non-Signatory Respondents of their fundamental due process right to be heard on all issues that affect their rights and interests.

*Second*, the Award is filled with damaging, inaccurate and derogatory findings against the Non-Signatory Respondents, which cause continuing harm to them every day that the Award stands.

*Third*, subsequent to the issuance of the Award, Patrick Jenevein, the manager of both Soaring Wind Energy LLC and Tang Energy Group, Ltd., and a primary instigator of the "stacked deck" arbitration, has made misleading and xenophobic public statements about the content and effect of the Award that must be refuted, underscoring the importance of prompt resolution of the Non-Signatory Respondents' Motions.

*Fourth*, Claimants seek to prejudice the Non-Signatory Respondents by relegating them to a more restricted enforcement action after the Award is confirmed against AVIC USA, where Claimants will argue that the Non-Signatory Respondents should be precluded from litigating the invalidity of the Award except as to their alleged alter ego status.

**B.** **Claimants' Scheme to Assert a Separate AVIC USA Ruling as "Law of the Case" Against the Non-Signatory Respondents Would Be Highly Prejudicial**

Claimants contend that if the Award is confirmed separately against AVIC USA *without the participation of the Non-Signatory Respondents*, "those rulings will be law of the case as to the same grounds asserted by the other Respondents." (Movants' Combined Reply Brief on Motion for Scheduling Order, Dkt. 260, at 2.) Claimants are wrong and this would be error, because the Non-Signatory Respondents cannot be bound by any ruling on the AVIC USA Motion that affects their rights and interests unless they have fully participated in the adjudication of the AVIC USA Motions.

Claimants showed, both in their vacatur motions and in their oppositions to Claimants' scheduling order motions, that Claimants' theories of liability against AVIC USA are inextricably intertwined with – and in fact are dependent upon – Claimants' theories of liability

against the Non-Signatory Respondents.  It is undisputed that "AVIC USA itself did not violate the contractual provision to refrain from engaging in the Business of (Soaring Wind Energy LLC) except through SWE."  (Award, p. 13, ¶ 65, Joint Respondents' Appendix ("JR App."), filed March 18, 2016, Dkt. No. 194.)  Thus, it is also undisputed that the "stacked deck" Panel found AVIC USA liable for breach of the SWE Agreement only through the alleged conduct of Non-Signatory Respondents (Award at p. 13, ¶ 66) and that the Award connected the Non-Signatory Respondents' conduct to the SWE Agreement by finding *that the SWE Agreement bound the Non-Signatory Respondents themselves.*  (Award at 12-13, ¶¶ 62-64.)[3]

AVIC USA and the Non-Signatory Respondents have repeatedly shown that AVIC USA's liability under the Award is thus wholly dependent on the "stacked deck" Panel's assertion of its own jurisdiction to apply the Soaring Wind Energy, LLC ("SWE Agreement") to the Non-Signatory Respondents, who appropriately objected at every opportunity to the Panel's attempts to assert jurisdiction over them.[4]   They have also cited controlling case law – along with this Court's *Ascendant* Order citing that same case law – to show that the Panel lacked jurisdiction to apply the SWE Agreement to the objecting Non-Signatory Respondents, and that it also lacked jurisdiction to find the Non-Signatory Respondents liable under the Agreement, either as parties or as alleged alter egos.

---

[3] The Panel exceeded its authority and acted without jurisdiction by determining that Non-Signatory Respondent AVIC IRE was an "affiliate" of AVIC USA based on evidentiary sanctions arising from illegal discovery orders of the Panel and prohibited from conducting business outside of SWE.  (Award at 12-13, 19-20, ¶¶ 62-64, 100-106.)   The Panel then improperly imputed AVIC IRE's conduct to AVIC USA to find that "AVIC USA breached the SWE Agreement by its affiliates engaging in the 'Business' of SWE" outside of SWE.  (Award at 13 and 25, ¶¶ 14, 66.)  The Panel then imputed that liability to the other Non-Signatory Respondents as purported alter egos.  *Id.*  This and other misconduct by the Panel requires vacatur under the pending AVIC USA and Non-Signatory Respondents Motions.

[4] *See, e.g.,* AVIC and CAIGA's combined Opposition to Motion to Confirm and Brief in support of Motion to Vacate, Dkt. No. 240, at 27-37; AVIC USA's Opposition to Motion to Confirm and Brief in support of Motion to Vacate, Dkt. No. 158, at 30-37; AVIC and CAIGA's Opposition to Motion for Scheduling Order, Dkt. No. 259, at 5-12; Respondent' Joint Sur-Reply to Scheduling Order Motion, Dkt. No. 262, at 1-2, and Exhibit 1 thereto; AVIC and CAIGA's Reply to Motion for Vacatur, Dkt. No. 305, at 12-19; Joint Opposition of AVIC, CAIGA, and AVIC IHC to Amended Motion for Scheduling Order, Dkt. No. 321, at 3-5 and 8-11.

An adjudication of the AVIC USA Motions would require the Court to confirm the Panel's findings against the Non-Signatory Respondents as a necessary predicate to confirmation against AVIC USA.  Since the Non-Signatory Respondents' own alleged status and liability under the SWE Agreement must be adjudicated *before* any confirmation of the Award against AVIC USA, *the Non-Signatory Respondents' due process right to full participation in the determination on the AVIC USA Motions is unquestionable*.  Conversely, if the Court vacates the Award as to AVIC USA on the ground that the Panel lacked jurisdiction to adjudicate party status or liability of the Non-Signatory Respondents, that finding also directly adjudicates the Non-Signatory Respondents' rights and requires their full participation.[5]

Claimants' strategy (in the event the Award is confirmed against AVIC USA) is to seek enforcement of the confirmed award against the Non-Signatory Respondents as purported alter egos and then contend that the Non-Signatory Respondents are prevented from litigating the underlying defects in the Award – after they had been shut out of participating in the Court's ruling on the AVIC USA Motions – because the "*issue has been decided once and for all*." (Movants' Combined Reply Brief on Motion for Scheduling Order, Dkt. 260 (italics added).) Because the AVIC USA Motions require adjudication of issues involving the Non-Signatory Respondents' rights and interests, and because those issues in turn cannot be decided without the Non-Signatory Respondents' participation, denial of their participation would be a denial of due process.[6]

---

[5] Even a finding that the "stacked deck" configuration of the Panel violated the SWE Agreement would squarely implicate the Non-Signatory Respondents' rights, because the Non-Signatory Respondents have an interest in securing vacatur of all the invalid findings made against them in the Award.

[6] A failure to lift the stay also results in a *de facto* severance of the action, which Respondents have shown is not justified on the facts and circumstances of this case.  *See* Respondents' Opposition to the Motion for Scheduling Order (Dkt. 259), Respondents' Sur-reply re: Motion for Scheduling Order  (Dkt. 267), and Respondents' Opposition to Claimants' Motion for Amended Scheduling Order (Dkt. 321).  *See* Section IV below.

**C.      The Non-Signatory Respondents Are Harmed by the Invalid and Derogatory Findings of the Award Every Day that the Award Is Allowed to Stand**

The Non-Signatory Respondents are also prejudiced by the continuing existence of the unconfirmed and invalid Award, with its baseless and derogatory findings against them.  Every day that the Award is not vacated constitutes additional harm to the Non-Signatory Respondents.

The inaccuracies and distortions in the Award are documented in the Respondents' vacatur motions and are too numerous to recount here.  (*See, e.g.,* AVIC and CAIGA's Combined Opposition to Motion to Confirm and Brief in Support of Motion to Vacate, Dkt. No. 240, at 27-44; AVIC USA's Opposition to Motion to Confirm and Brief in Support of Motion to Vacate, Dkt. No. 158, at 27-43.)  Moreover, the flawed arbitrator selection process and the lopsided 6-3 (or 7-2) Panel engineered by Claimants, was contrary to the rule of law and unprecedented in U.S. jurisprudence and in international arbitration, and irreparably taints the Panel's findings, providing the first jurisdictional ground for vacatur.

The Panel cobbled together a finding of alter ego liability among all Respondents using a combination of incompetent evidence, invalid evidentiary inferences, and implausible interpretations of the SWE Agreement.  Looming above all else was the Panel's outright violation of this Court's *Ascendant* Order holding that until the Court determined arbitrability as to the non-signatories, the arbitrators lacked jurisdiction over the Non-Signatory Respondents, which in turn meant that all of the Panel's findings relating to the Non-Signatory Respondents, including alter ego findings, were null and void.

**D.      Claimants Are Compounding the Harm of the Award by Misrepresenting Its Contents and Effect**

After entry of the Award in December 2015, Patrick Jenevein has systematically attempted to inflict the maximum harm on AVIC and the other Non-Signatory Respondents by misrepresenting the content and effect of the unconfirmed Award to high level government and

foreign relations authorities and in the press, falsely portraying Respondents as faithless business partners who do not honor their contracts or the rule of law.

### 1.    Mr. Jenevein Misrepresented the Award to the United States Congressional  Commission for U.S.-China Economic and Security Review

On January 26, 2017, Mr. Jenevein testified about the Award before the U.S.-China Economic and Security Review Commission of the U.S. Congress (the "Commission"),[7] falsely stating that the Award showed that Chinese state owned enterprises ("SOEs") do not honor their contractual obligations and take refuge behind improper assertions of sovereign immunity. Based on these and other misrepresentations, Mr. Jenevein urged the Commission to address the purported misconduct of AVIC and its subsidiaries by requiring SOEs to waive immunity to do business in the United States or authorizing U.S. plaintiffs to receive government support to fight claims of sovereign immunity.  January 26, 2017, Transcript of Testimony of Patrick Jenevein before U.S. China Economic and Security Review Commission, January 26, 2017 ("Commission Transcript"), at  pp. 7-8, Chao Declaration, ¶ 3, Appendix, Tabs 1 and 2.

Patrick Jenevein falsely testified that:

- "Tang established — per the findings of the arbitration tribunal — that AVIC Group HQ and its subsidiaries involved in the case were *alter egos* of one another."

Commission Transcript, at  p. 4, Chao Declaration, ¶ 3, Appendix, Tabs 1 and 2, APP. 000009.

---

[7] This Commission was created by the United States Congress in October 2000 with the legislative mandate to monitor, investigate, and submit to Congress an annual report on the national security implications of the bilateral trade and economic relationship between the United States and the People's Republic of China, and to provide recommendations, where appropriate, to Congress for legislative and administrative action.  *See* http://origin.www.uscc.gov/about. The complete hearing before the Commission on *Chinese Investment in the United States:  Impacts and Issues for Policymakers* given on January 26, 2017 is available at:  https://www.c-span.org/video/?422783-2/chinese-investment-us-part-2. *See* Chao Declaration ¶ 3.

Mr. Jenevein's statement was false and misleading for two primary reasons: *First,* the Award is *unconfirmed* and substantial motions to vacate are pending that challenge the Award's alter ego findings and multiple other defects in the Award. Absent confirmation and appellate affirmance of such confirmation, the Award *does not judicially establish anything*, let alone that AVIC and its subsidiaries are alter egos. An award *must* be confirmed before a court may enforce it. *See Hatzlachh Supply, Inc. v. Moishe's Electronics. Inc.*, 848 F. Supp. 25, 28 (S.D.N.Y. 1994) (domestic arbitral award must be confirmed before it is enforceable); *CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 846 F.3d 35, 51 (2d Cir. 2017) (same). Where, as here, there is a pending motion to vacate, an unconfirmed award is not only unenforceable, but it carries <u>no</u> precedential or preclusive effect. *See Fuller v. Interview, Inc.*, No. 07 CIV. 5728 RJS, 2014 WL 2601376, at *6 (S.D.N.Y. May 14, 2014) ("Since the arbitral award here is unconfirmed and the subject of a pending motion to vacate, it is not yet entitled to preclusive effect.").

*Second,* the Award suffers from many serious defects that require vacatur. As the Non-Signatory Respondents demonstrated in their Motions to Vacate, the Award is not binding on the Non-Signatory Respondents under this Court's *Ascendant* Order. The Tribunal never had jurisdiction or authority over the Non-Signatory Respondents, who objected to and did not participate in the arbitration. Claimants obtained the Award anyhow by engineering a lopsided 6-3 (or 7-2) Tribunal lacking impartiality, which they convinced to make findings of joint and several liability against both AVIC USA and the Non-Signatory Respondents without jurisdiction or legal basis. The Tribunal's findings of alter ego against the Non-Signatory Respondents were based on evidentiary sanctions arising from illegal discovery and discovery orders against a Non-Signatory. These flawed findings were imputed to AVIC USA and then, in

turn, unlawfully imputed to the other Non-Signatory Respondents.  (*See* AVIC and CAIGA

Motion to Vacate, Dkt. 240)

- "[N]ine jurists determined that AVIC Group HQ and its related subsidiaries operated as a single entity and that it used its control over its subsidiaries to commit a fraud and work an injustice on Tang."

Commission Transcript, at p. 2, Chao Decl., ¶ 3, Appendix, Tabs 1 and 2, APP. 000007.

This statement was false and misleading because (1) Claimants "stacked" the arbitral

Tribunal by choosing directly or indirectly, six (or seven) of the nine arbitrators— the same six

arbitrators who found in Claimants' favor in the Award, (2) only four of the nine arbitrators were

former judges (rather than hand-selected private attorneys), and (3) three of those four judges

*dissented* in *every* respect from the Award and refused to accept even one finding of claimants'

six arbitrators.  (Award, p. 1, n. 1.)   This was not a fair or impartial proceeding and the Award

was not unanimous.

- To evade liability, "AVIC Group HQ *and its subsidiary, CAIGA*, are asserting immunity from suit under the FSIA [Foreign Sovereign Immunities Act]."

Commission Transcript at 4, Chao Decl., ¶ 3, Appendix, Tabs 1 and 2, APP. 000009.

This statement was false and misleading because only AVIC, as a state owned enterprise

("SOE") of the People's Republic of China, asserted a defense of sovereign immunity.  CAIGA,

its subsidiary, did not (nor did any of the other Non-Signatory Respondents).  Furthermore, per

this Court's *Ascendant* Order, there is no liability to avoid because Claimants purposefully

refrained from seeking — as this Court held they were required to do — a prior court

determination of arbitrability as to the Non-Signatory Respondents "at the outset."   *See*

*Ascendant* Order.  Absent the  prior judicial determination of arbitrability, the arbitrators acted

beyond their authority and had no jurisdiction to hear evidence or making findings as to any of

the Non-Signatory Respondents.

### 2. Mr. Jenevein Misrepresented the Award in a Podcast Interview for the Council on Foreign Relations

On February 25, 2016, Mr. Jenevein gave a podcast interview to the Council on Foreign Relations-Asia Unbound, entitled "*How a US Company Took on a Chinese SOE and Won*" (the "Podcast"),[8] where he bragged that the Award has significant ramifications for AVIC's business interests in the U.S.

Mr. Jenevein falsely stated that:

- The Award is a clear display of a breach that "goes all the way back to AVIC in Beijing" and judicially establishes that AVIC is "a singularity, a single operating entity."

Podcast, *see* Chao Declaration, ¶ 5.

This statement is false and misleading because the Award does not "judicially establish" alter ego liability — to the contrary, the Award is unconfirmed, subject to pending motions to vacate, and is not binding authority for anything.  *See Fuller,* 2014 WL 2601376, at *6 ("Since the arbitral award here is unconfirmed and the subject of a pending motion to vacate, it is not yet entitled to preclusive effect.").

- Claimants won against "AVIC" on every single count in the arbitration.

Podcast, *see* Chao Declaration, ¶ 5.

This statement is false and misleading because Claimants prevailed on only one claim for breach of the SWE Agreement against AVIC USA and the Non-Signatory Respondents, and took no relief at all against Respondent Paul Thompson.  (*See* Award, pp. 24-28.)  Although

---

[8] "*How a US Company Took on a Chinese SOE and Won:* The story of breached contracts and bullying behavior will not be new for many familiar with the perils of doing business in China. But how Patrick managed to take on the behemoth state-owned enterprise Aviation Industry Corporation of China (AVIC) and win his case adds a fresh and uncommon twist."  The complete podcast is available here: http://blogs.cfr.org/asia/2016/02/25/podcast-how-a-u-s-company-took-on-a-chinese-soe-and-won/.  *See* Chao Declaration ¶ 5.

Claimants sought over $7.2 billion in damages, the Award gave Claimants less than one percent of that amount.

### 3. Claimants Has Misrepresented the Award in Press Releases and News Stories Read Around the World

Claimants have made numerous misleading and false statements about the content and effect of the Award in press releases and news stories carried around the world.  As one example, Patrick Jenevein said:

- The Award's alter ego findings show that "China coordinated and carried out these breaches in a 'top-down' fashion abusing and violating corporate formalities."

Angela Neville, *Dallas Wind Co. Scores $65M Award in Dispute with Chinese Partner*, TEXAS LAWYER, January 6, 2016 (quoting Patrick Jenevein), Chao Declaration, ¶ 4, Appendix, Tab 3, APP. 000016.

This statement is false and misleading because the Award was made by the six (or seven) arbitrators selected, directly or indirectly, by Patrick Jenevein and his brother, Robert Jenevein, Claimants then-lead counsel, with the three dissenting arbitrators refusing to join in even one finding or conclusion in the Award.  As shown above, the Award is unconfirmed, motions to vacate are pending, and the Award does not judicially establish alter ego or any role or involvement of the Chinese government in Claimants' dispute.

### E. The Non-Signatory Respondents Will Be Prejudiced if They Are Forced to Defend an Enforcement Action Without Being Heard on the AVIC USA and Non-Signatory Respondents Motions

Claimants' attempt to isolate AVIC USA for confirmation of the Award would cause enormous prejudice to the Non-Signatory Respondents (should their strategy succeed) by depriving them of the direct attack on the merits of the Award to which they are entitled through their pending motions to vacate.  Claimants' Motion to Lift the Stay only as to AVIC USA asks

the Court to disregard the Non-Signatory Respondents Motions – necessarily disregarding the Non-Signatory Respondents' many grounds for vacatur in the process – and to relegate the Non-Signatory Respondents instead to defending a subsequent enforcement action on much narrower grounds, in which Claimants would argue that the only issue should be the Non-Signatory Respondents' alleged status as alter egos of AVIC USA.

The motions to vacate are Non-Signatory Respondents' opportunity to attack the Award on the merits in all respects.  Challenges to the substance and merits of the Award are waived if not asserted in a timely motion for vacatur, and the timely filed Non-Signatory Respondents Motions are submitted and pending.  *See, e.g., Cullen v. Paine, Webber, Jackson & Curtis, Inc.*, 863 F.2d 851, 854 (11th Cir. 1989) (failure to file a timely motion for vacatur bars any later assertion of the invalidity of the award as defense to a confirmation action).

Claimants' apparent strategy of relegating the Non-Signatory Respondents' attacks on the Award only to a later enforcement action is improper and would be error, because the Non-Signatory Respondents' Motions show that AVIC USA's liability is inextricably intertwined with the Non-Signatory Respondents' liability and cannot be adjudicated separately.  The Non-Signatory Respondents have timely asserted grounds for vacatur that also require vacatur as to AVIC USA, those grounds must be adjudicated together, and Claimants' effort to limit the Non-Signatory Respondents to a later and narrower enforcement action where all those same challenges would no longer be available constitutes error and must be rejected.

## IV.    CLAIMANTS' REQUEST FOR A CONTINUED STAY AS TO THE NON-SIGNATORY RESPONDENTS AMOUNTS TO A *DE FACTO* SEVERANCE. THE CIRCUMSTANCES OF THIS CASE DO NOT SATISFY THE REQUIREMENTS OF F.R.C.P. RULE 21

Claimants' request for a continued stay as to the Non-Signatory Respondents amounts to a *de facto* severance of the action that would prevent the Non-Signatories from immediately

clearing their names and from protecting their interests.  AVIC and CAIGA have previously shown that such a severance must be adjudicated in accordance with the five-factor test under Fed.R.Civ.P. Rule 21, and that those factors weighed overwhelmingly against severance when Claimants requested it originally, just four months after the entry of the Award.  (*See* Respondents' Opposition to Motion for Scheduling Order (Dkt. 259) and Respondents' Sur-reply re Motion for Scheduling Order (Dkt. 267), and Respondents' Joint Opposition to Claimants' Amended Motion for Scheduling Order (Dkt. 321).)  It is now more than 14 months since the entry of the Award.  Claimants' shocking misrepresentations of the content and effect of the Award and these proceedings, to the prejudice of the Non-Signatory Respondents, has only tipped the balance even farther against Claimants' *de facto* severance.

A severance motion requires the court to consider: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims. *Paragon Office Servs., LLC v. UnitedHealthcare Ins. Co., Inc.*, 2012 WL 4442368, at *1-2 (N.D. Tex. Sept. 26, 2012) (citations omitted) (where claims subject to adjudication in the respective matters are inextricably intertwined, severance is plainly improper); *Old Colony Ventures I, Inc. v. SMWNPF Holdings, Inc.*, 918 F. Supp. 343, 350 (D. Kan. 1996) (severance of claims denied because they involve issues that were "at the center of this dispute"); *Compania Embotelladora del Pacifico v. Pepsi Cola Co.*, 256 F.R.D. 131, 133 (S.D. N.Y. 2009) (severance of counterclaim from plaintiff's underlying claim denied because the respective claims "are inextricably intertwined and will require overlapping if not identical proof").

Four of those factors remain unchanged from Respondents' earlier briefing: (1) same transaction or occurrence, (2) common questions of law or fact, (3) facilitation of settlement or judicial economy, and (5) witness and documentary proof.  (*See* Non-Signatory Respondents' Joint Opposition to Amended Motion for Scheduling Order, Dkt. 321, at 8-9.)  This Motion

shows once again, at pages 6-8, that a severance would be improper based solely on these factors, because the issues raised by all Respondents' vacatur motions are inextricably intertwined and because adjudication of AVIC's USA's liability depends on the Non-Signatory Respondents' liability.  But, with each passing day, the fourth factor – *prejudice* – weighs ever more heavily against delaying adjudication of the Non-Signatories' Motions for a single day beyond the time necessary to decide the AVIC USA Motions, as described herein at pages 8-13.

In summary, there is no reason for the Court to decide the AVIC USA Motions while relegating the Non-Signatory Respondents to non-participating status and depriving them of their own day in court.  There is every reason for all the Motions to be heard and decided together.

## V. CONCLUSION

Non-Signatory Respondents AVIC and CAIGA respectfully request this Court to lift the stay to permit the Non-Signatory Respondents to fully participate in these proceedings to protect their rights.  The Court issued the stay only "until further order of the Court," and there is no valid reason to continue the stay now. (Order, Dkt. 324.)  The Court can then proceed to rule on all the AVIC USA and Non-Signatory Respondents' Motions to vacate concurrently, and all Respondents can then proceed with any appeal therefrom.

Dated:  March 2, 2017

Respectfully submitted,

DLA Piper LLP (US)

_____

CEDRIC CHAO, Lead Counsel (*Pro Hac Vice*)
cedric.chao@dlapiper.com
ISABELLE ORD (*Pro Hac Vice*)
isabelle.ord@dlapiper.com
DAVID CHEIT(*Pro Hac Vice*)
david.cheit@dlapiper.com
KELLIN CHATFIELD (*Pro Hac Vice*)
kellin.chatfield@dlapiper.com

DLA Piper LLP (US)
555 Mission Street, Suite 2400
San Francisco, CA  94105
(415) 836-2500 Main
(415) 836-2501 Facsimile

ELIOT BURRISS
Texas Bar  24040611
eli.burriss@dlapiper.com
NICOLE FIGUEROA
Texas Bar  24069716
nicole.figueroa@dlapiper.com

DLA PIPER LLP (US)
1717 Main Street, Suite 4600
Dallas, Texas 75201
(214) 743-4500 Main
(214) 743-4545 Facsimile

**Attorneys for Respondents
AVIATION INDUSTRY CORPORATION OF
CHINA and CHINA AVIATION INDUSTRY
GENERAL AIRCRAFT CO., LTD**.

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that I conferred with counsel for Claimants via email on March 1, 2017 about this Motion and Claimants indicated that they oppose the relief requested.

*/s/ Cedric Chao*
Cedric C. Chao

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on March 2, 2017.

*/s/ Cedric Chao*
Cedric C. Chao