IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SOARING WIND ENERGY, LLC, | § | |
| TANG ENERGY GROUP, LTD., | § | |
| THE NOLAN GROUP, INC., MARY | § | |
| YOUNG (INDIVIDUALLY AND AS | § | |
| INDEPENDENT EXECUTRIX OF THE | § | |
| ESTATE OF KEITH P. YOUNG), | § | |
| MITCHELL W. CARTER, and | § | |
| JAN FAMILY INTERESTS, LTD., | § | |
| | § | |
| Movants, | § | |
| | § | |
| v. | § | Civil Action No. 3:15-CV-4033-K |
| | § | |
| CATIC USA, INC. (a.k.a. AVIC | § | |
| INTERNATIONAL USA, INC.), | § | |
| | § | |
| Respondent. | § | |

## ORDER CONFIRMING ARBITRATION AWARD

Before the Court are:  (1) Movants Soaring Wind Energy, LLC, Tang Energy

Group, Ltd., The Nolan Group, Inc., Keith P. Young, Mitchell W. Carter, and Jan

Family Interests Ltd.'s Motion to Confirm Arbitration Award Against Respondent

AVIC International USA, Inc. and Motion to Confirm Arbitration Award Against All

Other Respondents (Doc. No. 1); and (2) Respondent AVIC International USA,

Inc.'s Motion to Vacate Arbitration Award (Doc. No. 157).  The Court has carefully

reviewed the motions, responses, replies, the extensive record, the applicable law, and

ORDER – PAGE 1

the arbitration award. The Court finds no grounds upon which it must vacate, modify, or correct the arbitration award as to Respondent AVIC USA, Inc. ("AVIC USA"). *See* 9 U.S.C. § 9-11. The Court must confirm the arbitration award against AVIC USA because the arbitrators' ruling as to the liability of AVIC USA "'draws its essence'" from the Soaring Wind Energy Agreement. Accordingly, the Court **GRANTS** Movants' Motion to Confirm Arbitration Award Against Respondent AVIC International USA, Inc. and **DENIES** Respondent AVIC USA's motion to vacate the arbitration award.

## I.   Factual and Procedural Background

In 2008, Soaring Wind Energy, LLC ("SWE") was created with a Limited Liability Company Agreement ("the Agreement" or "the SWE Agreement"). The members of SWE are Respondent AVIC USA, non-party Paul E. Thompson ("Thompson"), and Movants Tang Energy Group, LLC ("TEG"), Keith P. Young, Mitchell W. Carter, Jan Family Interests, Ltd., and The Nolan Group, Inc. (collectively "Movants"). AVIC USA held a 50% membership in SWE, while the five Movants held the other 50% membership in varying percentages. The Agreement defined the purpose and nature of SWE's business:

> The purpose and nature of the business to be conducted by the Company shall be to provide worldwide marketing of wind energy equipment, services and materials related to wind energy including, but not limited to, marketing wind turbine generator

ORDER – PAGE 2

blades and wind turbine generators and developing wind farms (the "Business"), and to engage in any other business or activity that now or hereafter may be necessary, incidental, proper, advisable or convenient to accomplish the foregoing purposes (including the borrowing of money and the investment of funds) and that is not forbidden by the law of the jurisdiction in which the Company engages in that business.

The Agreement also contains a Dispute Resolution section ("Arbitration Provision") requiring disputes to be resolved in binding arbitration. The Arbitration Provision of the Agreement provides for the following process:

> (a) The Disputing Member desiring to initiate arbitration in connection with any Dispute shall notify the other Disputing Members in writing, which notice shall provide the name of the Arbitrator appointed by the Disputing Member, demand arbitration and include a statement of the matter in controversy.
> (b) Within 15 days after receipt of such demand, each other Disputing Member receiving notice of the Dispute shall name an Arbitrator. . . . The Arbitrators so selected shall within 15 days after their designation select an additional Arbitrator. . . . In the event that there are more than two Disputing Members to the Dispute, then unless otherwise agreed by the Disputing Members, the Arbitrators selected by the Disputing Members shall cause the appointment of either one or two Arbitrators as necessary to constitute an odd number of total Arbitrators hearing the Dispute.

It defines "Disputing Member" as "each Member that is a party to such Dispute."

"Member" is defined as "either a Class A Member or a Class B Member, or any Person hereafter admitted to the Company as a member as provided in this

Agreement, but such term does not include any Person who has ceased to be a member in the Company."

In June 2014, TEG filed a Demand for Arbitration, joined by the other Movants, asserting a claim for breach of Agreement against the Respondents—Signatories AVIC USA and Thompson as well as the Non-Signatory Respondents Aviation Industry Corporation of China, China Aviation Industry General Aircraft Co., Ltd., AVIC International Holding Corp., AVIC International Renewable Energy Corp., and CATIC TED, Ltd. (collectively "Non-Signatories"). The Non-Signatories are foreign companies. After the arbitration demand was made, each SWE member selected an arbitrator for a total of seven (7) arbitrators being selected—one each by AVIC USA and Thompson, as well as one by each of the five Movants. Following the process set out in the Arbitration Provision, those seven arbitrators then selected two additional arbitrators, resulting in a nine-member arbitration panel ("the Panel") in the proceeding. The Panel later permitted SWE to intervene as a party to the Arbitration. The Non-Signatory Respondents objected to any attempt to subject them to arbitration, and provided notice that they would not participate in the arbitration.

On August 5, 2014, after the Panel had been composed but before an arbitration award had issued, AVIC USA filed a complaint for declaratory judgment,

seeking the Court's intervention related to the composition of the Panel and also a stay of the arbitration proceedings. *AVIC Int'l USA, Inc. v. Tang Energy Grp., Ltd.*, Civil Action No. 14-CV-2815-K ("*AVIC USA I* case") (Doc. No. 1). The Court granted Defendant TEG's motion to dismiss, finding the Court had no jurisdiction to address AVIC USA's claims or grant the relief requested. *AVIC Int'l USA, Inc. v. Tang Energy Grp., Ltd.*, Civil Action No. 14-CV-2815-K, 2015 WL 477316, at 4-5 (N.D. Tex. Feb. 5, 2015). The Fifth Circuit affirmed this Court's ruling. *AVIC Int'l USA, Inc. v. Tang Energy Grp., Ltd.*, 614 F. App'x 218, 219 (5th Cir. 2015) ("*AVIC USA I* appeal").

On September 12, 2014, again before an arbitration award had issued, Ascendant Renewable Energy Corporation ("Ascendant"), a named Respondent in the arbitration but a non-signatory to the SWE Agreement, filed a complaint for declaratory judgment. *Ascendant Renewable Energy Corp. v. Tang Energy Grp., Ltd.*, Civil Action No. 14-CV-3314-K ("*Ascendant* case") (Doc. No. 1). Ascendant sought a stay of the arbitration and a declaration from the Court regarding its party status to the arbitration, including whether the Panel or a court must determine if Ascendant was a proper party to the arbitration as a non-signatory to the SWE Agreement which contained the arbitration provision. *Id.* (Doc. No. 1). On August 4, 2015, the Court granted Ascendant's motion for summary judgment, declaring:

ORDER – PAGE 5

> (1) whether Ascendant, a non-signatory to the Agreement, can be subject to arbitration based on the arbitration clause of the Agreement is for a court, not the arbitration panel, to decide because Ascendant disputes the very existence of an agreement between these parties; and (2) because the existence of any agreement between these parties is in dispute, any determination by the arbitration panel as to the jurisdiction over Ascendant is not controlling on a court.

*Ascendant Renewable Energy Corp. v. Tang Energy Grp., Ltd.*, Civil Action No. 14-CV-3314-K, 2015 WL 4713240, at * 3 (N.D. Tex. Aug. 4, 2015). The Court denied as moot the requested stay. No appeal was taken in that matter.

The arbitration hearing occurred August 10-14, 2015. On December 21, 2015, the Panel issued their Final Award. The panel concluded, in relevant part, that: (1) the SWE members vested the Panel with authority to determine their own jurisdiction, including arbitrability of any claim or defense, such as any dispute related to the interpretation or construction of any provision in the Agreement; (2) AVIC USA's "Affiliates", as defined in the Agreement, engaged in the "Business" of SWE in violation of the Agreement's covenant not to compete; (3) AVIC USA as a Signatory was liable for its Affiliates' breach of the Agreement; (4) the Movants were entitled to damages for lost profits relating to the breach and AVIC USA should be divested of its membership interest in SWE; (5) SWE properly intervened to assert its own claims for damages; (6) SWE was entitled to $62.9 million in damages and TEG was entitled to arbitration fees, attorneys' fees, and expenses (up through a final

appeal to the United States Supreme Court) allocated against all Respondents except Thompson; and (7) the Movants were the "prevailing Members" as defined in the Agreement.

Before the Court now are the Movant's motion to confirm the arbitration award and the AVIC USA's motion to vacate the arbitration award.

## II.   Applicable Law

There is a strong federal policy favoring arbitration, as reflected in the Federal Arbitration Act ("FAA").  *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586-590 (2008).  "Judicial review of an arbitration award is extraordinarily narrow and [the courts] should defer to the arbitrator's decision when possible."  *Antwine v. Prudential Bache Sec., Inc.*, 899 F.2d 410, 413 (5th Cir. 1990); *see Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 471-72 (5th Cir. 2012); *Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 385 (5th Cir. 2004)("Our established rules of deference foreclose all but the most limited review.").  The FAA permits a district court to vacate an arbitration award in these very limited circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;

> (2) where there was evident partiality or corruption in the arbitrators, or either of them;

> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown,

> or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).  These are the exclusive grounds on which a court may vacate an arbitration award under the FAA.  *Hall St. Assocs.,* 552 U.S. at 586-590 (holding "§§ 10 and 11 provide exclusive regimes for the review provided by the [FAA]"); *see Citigroup Glob. Mkts., Inc. v. Bacon*, 562 F.3d 349, 355 (5th Cir. 2009).  An arbitration award may not be vacated for "mere mistake of fact or law."  *Rain CII Carbon*, 674 F.3d at 472 (internal quotation marks omitted).

The party seeking vacatur of an arbitration award bears the burden of proof, and the reviewing court must decide any uncertainties or doubts in favor of sustaining the award.  *Brabham*, 376 F.3d at 385.  In reviewing an arbitration award, the court applies the "essence" test.  *See Timegate Studios, Inc. v. Southpeak Interactive, L.L.C.*, 713 F.3d 797, 802 (5th Cir. 2013); *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1320 (5th Cir. 1994).  The court must confirm an arbitration award "as long as the arbitrator's decision 'draws its essence' from the contract," in other words "the arbitrator's decision is rationally inferable from the letter or purpose of the underlying agreement."  *Timegate Studios*, 713 F.3d at 802 (quoting *Executone*, 26 F.3d

at 1320).  "[T]he question is whether the arbitrator's award was so unfounded in reason and fact, so unconnected with the wording and purpose of the . . . agreement as to manifest an infidelity to the obligation of an arbitrator."  *Executone*, 26 F.3d at 1325 (internal quotations omitted).  It is irrelevant whether the reviewing court disagrees with the arbitrator's interpretation of the contract.  *Timegate Studios*, 713 F.3d at 802.  The reviewing court considers only the arbitrators' resulting decision and "does not review the language used by, or the reasoning of, the arbitrators in determining whether their award draws its essence from the contract."  *Executone*, 26 F.3d at 1325 (internal quotations omitted).  "Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept.  Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts."  *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37-38 (1987).

The arbitrators' powers and authority are "'dependent on the provisions under which the arbitrators were appointed.'"  *Brook v. Peak Int'l, Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002)(quoting *Szuts v. Dean Witter Reynolds, Inc.*, 931 F.2d 830, 831 (11th Cir. 1991)).  "Whether an arbitrator has exceeded his powers is tied closely to the applicable standard of review"—that being whether the arbitrator's decision "draws

its essence" from the underlying contract. *Timegate Studios*, 713 F.3d at 802. The court looks to "whether the arbitrator's award 'was so unfounded in reason and fact, so unconnected with the wording and purpose of the [contract] as to "manifest an infidelity to the obligation of an arbitrator.""" *Id.* (quoting *Brotherhood of R.R. Trainmen v. Cent. of Ga. Ry. Co.*, 415 F.2d 403, 412 (5th Cir. 1969)). "'[A]s long as [an honest] arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" *E. Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 62 (2000) (internal citations omitted). The reviewing court must resolve all doubts in favor of arbitration. *Executone*, 26 F.3d at 1320-21.

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention") applies "if the [arbitration] award arises out of a commercial dispute and at least one party is not a United States citizen." *Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft mbH & Cie KG*, 783 F.3d 1010, 1015 (5th Cir. 2015). Arbitration awards governed by the Convention are enforced under the FAA. 9 U.S.C. § 201. Just as review is exceedingly narrow under the FAA, the Convention does not permit a reviewing court to "refuse to enforce the award solely on the ground that the arbitrator may have made a mistake of law or fact." *See Asignacion*,

783 F.3d at 1015.  A court must confirm the arbitration award unless the party opposing confirmation meets its burden of establishing a reason under Article V of the Convention for the court to deny enforcement of the arbitral award.  *See id.* at 1015-1016.

III.    **Application of the Law to the Facts**

    A.    **Selection and Composition of Arbitration Panel**

AVIC USA first insists the arbitration award must be vacated because the Panel was selected in violation of the Agreement's terms and, alternatively, the composition of the Panel violates public policy and due process.

### 1.  Did the Arbitrators' Appointment Violate the SWE Agreement?

AVIC USA contends the Panel exceeded their powers, as defined in Section 10, because they were "not selected in accordance with the provisions of the Agreement," so the award must be vacated.  AVIC USA argues that the clear language of the Agreement requires the appointment of one arbitrator per side, not one arbitrator per member; this was AVIC USA's understanding of the selection provision and it would never "agree[ ] to nor contemplate[ ] arbitrating a two-sided dispute in which one side chose five arbitrators and the other side chose two."

<u>a)</u>      Procedural Challenge for the Panel

Regardless of how AVIC USA tries to frame this argument, it comes down to a "'challenge[ ] that essentially [goes] to the procedure of arbitration.'"  *Adam Techs. Int'l S.A. de C.V. v. Sutherland Glob. Servs., Inc.*, 729 F.3d 443, 452 (5th Cir. 2013)(quoting *Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 488 (5th Cir. 2002)).   AVIC USA's argument turns on the fairness of the selection process.  Such "procedural questions" are presumed to be for an arbitrator to decide. *Adam Techs. Int'l*, 729 F.3d at 452 (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).  AVIC USA has advanced no compelling argument or evidence to establish otherwise.

Article XIII of the SWE Agreement addresses the parties' agreement on Dispute Resolution.  Section 13.1 provides, in relevant part, the Arbitration Provision "shall apply to any controversy, dispute or claim arising under or related to this [SWE] Agreement . . . including (a) any dispute regarding the construction, interpretation, performance, validity or enforceability of any provision of this [SWE] Agreement . . . ."  The parties agreed to first attempt an informal resolution of any dispute then, if that negotiation failed, the parties agreed to submit the dispute to binding arbitration.  *See* SWE Agmt., Secs. 13.2 and 13.3 at p. 46.   The SWE Agreement specifically sets out the arbitrator selection process and incorporates the

rules and procedures of the American Arbitration Association.  The presumption that the arbitrators must decide any procedural question, including the arbitrator selection process, clearly applies in this case.  *See Howsam*, 537 U.S. at 84.  The arbitrators found that the "panel is composed in a manner provided by the unambiguous agreement of the parties as set forth in Article XIII of the SWE Agreement."  They also found that the parties "clearly and unmistakably empowered this panel to determine whether this arbitration involves a controversy, dispute, or claim arising under or related to the SWE Agreement . . . including any dispute regarding the construction, interpretation, performance, validity or enforceability of any provision of the SWE Agreement."  The arbitrators' conclusion on this issue is binding and is not for this Court to review on the basis of a procedural challenge, such as the parties agreed otherwise.  *See also Adam Techs. Int'l*, 729 F.3d at 452 ("Adam's appellate argument that the *Howsam* presumption disappears because of Adam's interpretation that the parties agreed otherwise is unavailing.").  AVIC USA must establish a statutory reason for vacatur related to the composition of the panel that the Court may consider in its very narrow review.

<u>b)</u>        <u>The Panel Did Not Exceed Their Power</u>

The parties to an arbitration agreement may agree by contract to the arbitrator selection process.  *Brook v. Peak Int'l., Ltd.*, 294 F.3d 668, 672 (5th Cir. 2002).  When

the arbitration agreement provides for the appointment method of the arbitrators, the FAA specifically requires that the agreed method "shall be followed."  9 U.S.C. § 5; *see id.* at 672-73; *see also Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)(recognizing "the FAA's primary purpose [is] ensuring that private agreements to arbitrate are enforced according to their terms" because "[a]rbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit.").

Claiming the arbitrators exceeded their powers, AVIC USA first contends the arbitrators were not selected in accordance with the Arbitration Provision because the Panel was "dominated by [TEG] appointees" and AVIC USA never agreed to a selection provision which would allow such a lop-sided panel in a dispute.  Next, AVIC USA argues the Arbitration Provision requires a panel of three arbitrators in any scenario and asks the Court to "give effect to the plain and objectively reasonable meaning of the arbitrator selection provision for this dispute as understood by AVIC USA: one arbitrator per side plus a third arbitrator as a tie-breaker."  Finally, AVIC USA contends the arbitration selection provision was misinterpreted because the Non-Signatories were not allowed to select arbitrators.  As a result of these factors, AVIC USA alleges that the Court's refusal to vacate the award issued by this

arbitration panel as it was composed will cause "an absurd and fundamentally unjust result."

AVIC USA attempts to characterize its arguments as being centered on an arbitration panel appointed in violation of the method provided for in the parties' arbitration agreement, therefore requiring vacatur.   However, the record does not bear this out. The Arbitration Provision does indeed clearly provide for a method of selecting the arbitrators, but it is not the method alleged by AVIC USA.   Presented with a similar, if not identical, argument in the *AVIC USA I* appeal, the Fifth Circuit so astutely noted:

> Simply put, when [AVIC USA's] position is reduced to its bare essentials, AVIC [USA] is asking us to rewrite their agreement's arbitration provision to require that every arbitration among these multiple parties comprise only two "sides".  It is apparent from the plain wording of that provision, however, that the agreement contemplates the possibility of there being three or more "sides" among the several parties to the agreement.   More to the point, AVIC's strained interpretation of the arbitration provision would mandate that there be precisely three arbitrators in any and every instance, no more and no fewer—one selected by one "side," a second selected by the other "side," and the third selected by the first two.   The unambiguous wording of the arbitration provision eschews such a reading: The agreement expressly contemplates the possibility of (1) an even number of arbitrators (an impossibility under AVIC's proposed, three-only arbitrators interpretation) and (2) adding either one *or two* more arbitrators to achieve an odd number (also an impossibility under a three-only arbitrator situation).

*AVIC Int'l USA*, 614 F. App'x. at 219 (emphasis in the original).  It is readily apparent to this Court that the Fifth Circuit's summary is true and applicable even now as AVIC USA takes the same position.

As SWE Members, AVIC USA and the Movants contracted in their Arbitration Provision for a specific appointment method of the arbitrators in the event of a dispute.  The FAA specifically mandates that if an appointment process is agreed-to, the agreed method "shall be followed."  9 U.S.C. § 5; *see Brook*, 294 F.3d at 672 -73; *see also Volt Info. Scis.*, 489 U.S. at 479 (recognizing "the FAA's primary purpose [is] ensuring that private agreements to arbitrate are enforced according to their terms" because "[a]rbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit.").  The method by which these arbitrators were selected was in accordance with the exact process agreed to by the parties in their Arbitration Agreement.  AVIC USA has established nothing to the contrary.  The Panel did not exceed their powers and the Court will not vacate the arbitration award on these grounds.

### 2.    Will Violations of Public Policy and Due Process Support Vacatur?

AVIC USA argues in the alternative that even if the Arbitration Agreement permitted this particular process, the resulting panel was "stacked" which violates

public policy and requires vacatur of the award.  Public policy is no longer a recognized, valid ground for vacating an arbitration award under the FAA.  *See Citigroup*, 562 F.3d at 358.  The United States Supreme Court held that grounds for vacatur are limited to those specifically set forth in Section 10 of the FAA.  *Hall St. Assocs., L.L.C.*, 522 U.S. at 586.  A court may not vacate an arbitration award on common law grounds, such as public policy, because they are not specifically provided for in the statute.  *See Citigroup*, 562 F.3d at 358 (any "non-statutory ground for setting aside an [arbitration] award must be abandoned and rejected."); *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 3:09-CV-1084-B , 2010 WL 1962676, at *2 (N.D. Tex. May 14, 2010)(Boyle, J.)("[W]hile public policy was once recognized as a common law ground for vacating an arbitration award, in light of *Hall Street* and its progeny, it [is] no longer an adequate basis for vacatur.").  AVIC USA cites to no case law post-*Hall Street* which would permit this Court to review the arbitration award on public policy grounds.  This argument is outside the narrow scope of review the Court is permitted to conduct under the FAA.  Accordingly, the Court will not consider the merits of this argument and will not vacate the arbitration award on this common law basis.

In a single sentence footnote, AVIC USA contends this arbitration panel violates public policy under Article V of the Convention and requires the award be

vacated.  The party seeking vacatur bears the burden of proving an Article V reason precludes confirmation of the award; "[a]bsent 'a convincing showing' that one of these narrow exceptions applies the arbitral award will be confirmed."  *In re Arbitration Between Trans Chem. Ltd. and China Nat. Machinery Import & Export Corp.*, 978 F. Supp. 266, 309 (S.D. Tex. 1997)(citing *Imperial Ethiopian Gov't v. Baruch-Foster Corp.*, 535 F.2d 334, 336 (5th Cir. 1976)).  Although public policy may support vacatur under Article V of The Convention, AVIC USA submits no actual argument on this point, provides no citations in support, and fails to even reference which specific section of Article V applies.  AVIC USA failed to meet its burden to establish vacatur is required under Article V of the Convention.  *See id.*.

Finally, AVIC USA claims the process of composing this Panel violates due process because it is in contravention to the objective of the selection process and the idea of a neutral panel, resulting in "the appearance that the arbitration process can be and was rigged."  However, this is essentially where the argument ends.  Beyond making this claim in a sentence or two, AVIC USA fails to put forth any substantive argument on this point or provide citations to case law in support. To the extent AVIC USA asserts due process as grounds for vacatur under the FAA, the argument would fail for the same reasons as public policy violations.  Common law grounds are no longer valid to support vacatur under the FAA.  *See Citigroup*, 562 F.3d at 358.

AVIC USA does not reference Article V of The Convention in this argument, but even if it did, the argument would fail. AVIC USA made no showing, let alone "a convincing showing," that a narrow exception under Article V applies. *See Trans Chem. Ltd.*, 978 F. Supp. at 309. The Court will not consider this due process argument as a basis for vacating the arbitration award.

In conclusion, the Court cannot vacate the arbitration award on any of the aforementioned grounds related to the selection and composition of the Panel as asserted by AVIC USA. *See Brabham*, 376 F.3d at 385 ("Given these constraints, judicial review of an award's rationality must be confined to situations in which the party challenging the award can prove that clearly applicable law or the parties' contract indisputably dictates a contrary result.").

### B.    Expansion of Issues Identified or Submitted to Arbitration Panel

AVIC USA argues the Panel exceeded its authority when it identified an "ambiguity" in the SWE Agreement that none of the parties identified or submitted to the panel. Specifically, AVIC USA contends the Panel read Section 6.10 to include the term "Affiliate", as defined and used in the Agreement, when that was not in dispute, thereby effectively rewriting the contract and allowing the panel to find AVIC USA liable on this unjustified interpretation.

Among their many findings, the Panel concluded:

> 62.   The extent of the exclusive arrangement agreed to by the Members as set out in the Agreement is ambiguous.   Section 6.10 appears to apply only to Members.   On the other hand, Section 6.11 prohibits any Member, it Representatives and Affiliates from engaging in the "Business" of SWE except through SWE.   Section 6.12 prohibits Class A Members and their Affiliates from "participating" in wind farm land development projects except through entities owned jointly by SWE and CATIC.   The Agreement's confidentiality provision prohibits Members and their Affiliates from revealing confidential information about the company, the Members, Affiliates or the Agreement.   The Chicago Agreement clearly states that "SWE will be the exclusive vehicle for both Tang and CATIC interest in the wind industry."   The great weight of the evidence supports a construction that Members, their Affiliates and Representatives will only conduct the "Business" through SWE.

> 65.   AVIC USA itself did not violate the contractual provision to refrain from engaging in the Business of SWE except through SWE.

> 66.   However, AVIC USA's affiliates as defined by the SWE Agreement, competed against SWE and engaged in the "Business" of SWE thereby violating the SWE Agreement's exclusive arrangement.   Specifically, AVIC HQ, AVIC International, AVIC IRE and Ascendant, are "Affiliates" of AVIC USA because they directly or indirectly controlled AVIC USA and all are under the common control of AVIC HQ.   As a result, AVIC USA breached the SWE Agreement by its Affiliates engaging in the "Business" of SWE.

Final Award at pp. 12-13.

The Panel found an ambiguity in reading Sections 6.10, 6.11, *and* 6.12, along with other provisions, in an attempt to define the exclusivity of the parties' Agreement on conducting wind energy-related "Business".   In reading the Agreement's provisions together, the Panel found that "[t]he SWE Agreement requires Members and their Representatives and Affiliates to conduct the 'Business' of SWE solely through SWE or its Controlled Companies."   There is no citation to any specific section of the Agreement as the basis for this finding and AVIC USA never identifies any liability finding by the Panel based specifically on a breach of Section 6.10.   In fact, the Panel's determinations make it clear that other provisions also prohibited Members and Affiliates from competing with SWE Business, and these could arguably have provided the basis for the liability determination.   The Court's review of the award reveals that the Panel simply did not make the liability determination as to AVIC USA as it has alleged.   This argument does not support vacatur.

AVIC USA's argument essentially amounts to assertions that the Panel's interpretation was flawed.   This Court may not second-guess the panel's conclusions on any issues involving contract interpretation in this very narrow review.   *See Am. Laser Vision, P.A. v. Laser Vision Inst., L.L.C.*, 487 F.3d 255, 260 (5th Cir. 2007), *overruled on other grounds by Hall St. Assocs.*, 552 U.S. at 584-86 ("We will not second-

guess multiple, implicit findings and conclusions underpinning the award.  We do not

decide if the award was free from error."); *Executone*, 26 F.3d at 1325 (the reviewing

court considers only the arbitrators' resulting decision and "does not review the

language used by, or the reasoning of, the arbitrators in determining whether their

award draws its essence from the contract."); s*ee also E. Associated Coal*, 531 U.S. at 62

("'[A]s long as [an honest] arbitrator is even arguably construing or applying the

contract and acting within the scope of his authority,' the fact that 'a court is

convinced he committed serious error does not suffice to overturn his decision.'");

*McKool Smith, P.C. v. Curtis Int'l, Ltd.*, 650 F. App'x. 208, 211 (5th Cir.

2016)("Under this [extraordinarily narrow] review, an award may not be set aside for

a mere mistake of fact or law.").  This arbitration award clearly draws its essence from

the SWE Agreement, defining the "Business" arrangement's degree of exclusivity in

order to determine whether a breach occurred and by whom, both of which were

central issues to the arbitration.  *See Timegate Studios*, 713 F.3d at 802-803 ("[A]n

arbitrator has not exceeded his powers unless he has utterly contorted the evident

purpose and intent of the parties—the 'essence' of the contract," and the Court must

confirm it even if in disagreement with the panel's interpretation.).

    The Court cannot vacate the arbitration award on these grounds.

C.      Misconduct by the Arbitration Panel

AVIC USA contends the Panel engaged in misconduct in multiple instances, requiring the Court to vacate the arbitration award.

1.      Did the Panel Ignore This Court's Previous Order?

Citing to this Court's order in the *Ascendant* case, AVIC USA argues that the Court "determined that the panel had no authority to adjudicate whether Ascendant (or any other non-signatory, by extension) is bound by the Agreement." Nevertheless, AVIC USA argues the Panel "impermissibly ignored this Court's prior ruling" in determining the Non-Signatories are the alter egos of AVIC USA and therefore, "are bound by the Agreement."  AVIC USA contends this disobedience of a court order constitutes misconduct which prejudiced AVIC USA, and the award must be vacated.  *See* 9 U.S.C. § 10(a)(3) (grounds for vacatur of award include "any other misbehavior by which the rights of any party have been prejudiced").

In the *Ascendant* case, the Court "declar[ed] that Ascendant's party status to the arbitration can only be determined by a court, not an arbitrator" because non-signatory Ascendant attacked the very existence of any agreement to arbitrate with Tang or any other respondent.  *Ascendant Renewable Energy Corp.*, Civ. Action No. 3:14-CV-3314-K, 2015 WL 4713240, at *3.  The Court then declared that if an arbitration panel did make a determination as to jurisdiction over or party status of

Ascendant, that decision would be owed no deference and would not be "controlling on a court" reviewing an arbitration award.  *Id.*  (Ascendant is not a party to the instant case.)

Nowhere in that order did the Court prohibit or forbid the Panel from making any determination regarding jurisdiction over or party status of Ascendant in relation to the Agreement on any theory, including alter ego.  Furthermore, the Court also did not declare or otherwise order that this Court must decide Ascendant's party status before any arbitration may proceed.  The Court simply declared Ascendant's right for a court to "resolve whether an agreement to arbitrate exists that would require Ascendant to participate in the underlying arbitration," and confirmed that if the Panel did make such a determination, the reviewing court would owe the Panel's finding no deference and would not be bound by it.  The Court did not opine or make any ruling as to whether an agreement to arbitrate did indeed exist or whether some alternative theory could bind Ascendant to arbitrate; neither issue was before the Court in that declaratory judgment action.

AVIC USA contends the Panel disobeyed the order "[b]y taking the non-signatory alter ego question away from this Court," and this constitutes misconduct.  This argument is meritless as the Panel did not "take away" this issue from the Court.  Citing clear Fifth Circuit precedent, the Court declared in the *Ascendant* case that a

reviewing court owes no deference to and is not bound by any such finding by arbitrators.  No where did the Court order that the Panel could not hear the issue of or make a determination regarding the jurisdiction over and/or party status of Ascendant; rather, the Court declared simply that an arbitrator's findings would not be binding on a reviewing court in an instance where the existence of an agreement to arbitrate was in dispute.  The Panel did not ignore this Court's order in the *Ascendant* case.

The Court concludes AVIC USA did not establish the Panel committed any misconduct under this theory, therefore the Court cannot vacate the arbitration award on this basis.

### 2.    Did the Panel Make Adverse Inferences Against AVIC USA?

AVIC USA also argues the arbitration panel committed misconduct when it made "adverse inferences against AVIC USA based solely on the non-signatories' absence from the arbitration."  Again citing the order in the *Ascendant* case, AVIC USA claims the Court "rul[ed] that the non-signatories had no obligation to participate in the [arbitration] proceedings" yet, the Panel determined the Non-Signatories' participation was required and, when they did not participate, punished AVIC USA.

As previously discussed, the Court did not rule or otherwise determine in the *Ascendant* case that the Non-Signatories were not required to participate in the arbitration as AVIC USA alleges.  Ascendant, which is not a party to the instant action, was the only Non-Signatory to appear in that declaratory judgment action. The Court declared Ascendant's rights under the controlling law, specifically that it was for a court, not an arbitrator, to decide Ascendant's party status because it attacked the existence of any agreement to arbitrate with Tang or any other party, and, if the arbitrator did make such a determination, it would not be controlling on a court reviewing the arbitration award.  There was never a ruling from this Court that Ascendant, the only non-signatory to appear before it, had no obligation to participate in the arbitration proceedings, as AVIC USA claims.  That issue was not before the Court.  AVIC USA has misconstrued or misinterpreted the Court's ruling in the *Ascendant* case, and this argument fails to the extent the "adverse inference" argument relies on this misinterpretation.

AVIC USA contends that it was "punished" by the Panel when they found AVIC USA liable based on adverse inferences the Panel made as a result of the Non-Signatories' refusal to participate.  AVIC USA alleges the damages award is at least some indication  of how "the panel's 'adverse' view of the evidence affected its findings."  The only specific adverse inference AVIC USA references is the following

sentence: "As a result, the panel has opted to infer that Xu Hang's statement in CX 330 that AVIC International has invested $50 USD million in wind power projects in the United States is accurate without any additional evidence."  AVIC USA argues there was no actual evidence to support any damages award and, in fact, there was uncontested evidence rebutting Xu Hang's statement.

At the heart of this argument, AVIC USA is ultimately complaining about: (1) the arbitration panel's decision to make an adverse inference pursuant to their authority under the AAA rules and language in the SWE Agreement, as interpreted by the Panel; and (2) the weight the Panel chose to give the evidence.  The Court cannot vacate the arbitration award based on errors in interpretation or application of the law, or mistakes in factfinding.  *See United Paperworkers*, 484 U.S. at 38; *McKool Smith*, 650 F. App'x. at 211.  Moreover, arbitrators have broad discretion in making evidentiary rulings, and a court generally does not review those rulings.  *Int'l Chem. Workers Union v. Columbian Chems. Co.*, 331 F.3d 491, 497 (5th Cir. 2003)(citing *Amalgamated Meat Cutters & Butcher Workmen of N. Am. v. Neuhoff Bros.*, 481 F.2d 817, 820 (5th Cir. 1973)("[T]he arbitrator has great flexibility and the courts should not review the legal adequacy of his evidentiary rulings.")).  AVIC USA did not meet its burden to establish the panel committed misconduct in this instance to support vacatur of the award.

### 3. Did the Panel Improperly Determine Non-Signatories Participated in Arbitration?

AVIC USA claims the Panel committed misconduct in making adverse inferences based on the Non-Signatories' "willful disobedience" in their selective participation in the arbitration discovery. This argument relates to AVIC USA's previous argument regarding the Panel's adverse inferences. Here, AVIC USA argues the Panel's basis for the adverse inferences, the Non-Signatories' "willful disobedience", constitutes misconduct.

It is well-established that "'as long as [an honest] arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,'" the reviewing court must affirm the award. *E. Associated Coal*, 531 U.S. at 62 (internal citations omitted). In Paragraph 128 of the award, the Panel noted the authority upon which they relied in drawing the adverse inferences, including language from the Agreement. The Court cannot conclude that the Panel exceeded their powers by "utterly contort[ing] the evident purpose and intent of the parties—the 'essence' of the contract." *See Timegate Studios*, 713 F.3d at 802-03. AVIC USA failed to meet its burden to prove the panel committed misconduct to justify vacatur of the award.

### D.      Panel Exceeding Its Powers

AVIC USA argues the arbitration panel exceeded its powers in awarding damages and attorneys' fees which are expressly prohibited by the Agreement, and in exercising jurisdiction over the derivative SWE claims.

The arbitrators' powers and authority are "dependent on the provisions under which the arbitrators were appointed." *Brook*, 294 F.3d at 672 (internal quotations omitted).  In deciding whether an arbitrator has exceeded his powers, the court looks to "whether the arbitrator's award 'was so unfounded in reason and fact, so unconnected with the wording and purpose of the [contract] as to "manifest an infidelity to the obligation of an arbitrator."'" *Timegate Studios*, 713 F.3d at 802 (quoting *Bhd. of R.R. Trainmen*, 415 F.2d at 412).  "[A]n arbitrator has not exceeded his powers unless he has utterly contorted the evident purpose and intent of the parties—the 'essence' of the contract." *Id.* at 802-03.  It is well-established that "'as long as [an honest] arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that 'a court is convinced he committed serious error does not suffice to overturn his decision.'" *E. Associated Coal*, 531 U.S. at 62 (internal citations omitted).

  1.  **Did the Panel Award Damages Expressly Prohibited by the Agreement?**

  AVIC USA contends the Panel's award of $62.9 million in lost profits violates specific language of the Agreement which prohibits consequential, speculative, and remote damages; therefore, the panel exceeded their powers.

  In support of its argument, AVIC USA cites to Section 17.10 of the Agreement which provides:

>   17.10 <u>No Consequential or Punitive Damages</u>. IN NO EVENT SHALL ANY MEMBER OR ANY OF ITS RESPECTIVE REPRESENTATIVES OR AFFILIATES BE LIABLE TO THE COMPANY OR TO ANY OTHER MEMBER OR ITS REPRESENTATIVES OR AFFILIATES FOR ANY EXEMPLARY, PUNITIVE, SPECIAL, INDIRECT, CONSEQUENTIAL, REMOTE OR SPECULATIVE DAMAGES.

SWE Agreement at p. 55, ¶ 17.10. AVIC USA first argues that this damages award constitutes consequential damages as Delaware law clearly provides that "lost profits" are consequential damages. (SWE is a Delaware limited liability company.) What AVIC USA fails to clarify is that well-established Delaware law provides that "lost profits" on "*collateral* business arrangements" are considered consequential damages. *See eCommerce Indus., Inc. v. MWA Intelligence, Inc.*, C.A. No. 7471-VCP, 2013 WL 5621678, at * 47 (Del. Ch. Sept. 30, 2013)(quoting *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 109 (2d Cir. 2007)). "By contrast, lost profits are not

considered consequential damages when 'profits are precisely what the non-breaching party bargained for, and only an award of damages equal to lost profits will put the non-breaching party in the same position he would have occupied had the contract been performed.'" *eCommerce Indus.*, C.A. No. 7471-VCP, 2013 WL 5621678, at *47 (principle applies in context of non-compete provision which was central to the non-breaching party's bargained-for agreement).

In making this award, the Panel clearly stated that these "lost profit" damages were the direct result of the breach of the parties' Agreement not to compete directly on wind power project(s). This breach was not related to a "collateral business arrangement", but was, at the least, a very important part of what the parties bargained for in this Agreement. *See id.* ("With respect to a non-compete provision or agreement, I conclude that the profits of the product line or business that is being protected from competition constitute the benefit for which the protected party bargained. Furthermore, lost profits on the part of the non-breaching party are the direct and natural consequence of breaching a non-compete provision."). The Court disagrees that Delaware law automatically categorizes these damages as consequential and finds AVIC USA did not establish the Panel exceeded their authority.

AVIC USA next argues the "lost profits" award is "wholly speculative" because it is based solely on adverse inferences whereas the "actual unrebutted evidence"

establishes there was no such investment.  As the Court discussed *supra*, AVIC USA did not meet its burden related to its adverse inferences arguments.  AVIC USA's argument that the award was purely speculative because it is based on these adverse inferences must fail.  The Panel indicated in the arbitration award the "lost profits" damages arose from breach of the Agreement, and included how they arrived at it in light of the Agreement and the evidence they considered.  The Court cannot agree with AVIC USA that this award was "wholly speculative" or a "complete guess".

The Court concludes that the award draws its essence from the Agreement.  *See Timegate Studios*, 713 F.3d at 802 (irrelevant whether reviewing court disagrees with the arbitrator's interpretation of the contract); *Executone*, 26 F.3d at 1325. Accordingly, AVIC USA failed to meet its burden to establish the Panel had no authority under the Agreement to award these damages, thereby exceeding their powers and requiring vacatur.

### 2.    Did the Panel Award Punitive or Special Damages by Divesting AVIC USA's Interest in SWE?

Next, AVIC USA argues the Panel exceeded its powers in divesting AVIC USA of its interest in SWE because this amounts to punitive or exemplary damages which are expressly prohibited under the Agreement.  AVIC USA also argues the divestiture of its interest in SWE was "patently unreasonable" because the Panel expressly found that AVIC USA itself did not breach the Agreement.

As with the previous argument, the Court cannot agree that divesting AVIC USA of its interest in SWE was punitive or special damages.  The Panel did not characterize the divestiture as "punitive" or "special" damages in the award, and AVIC USA provides no persuasive argument or case law establishing such a divestiture is considered punitive or special damages.

In *Executone*, the Fifth Circuit reaffirmed it prior holding that the arbitrators' choice of remedy is afforded more deference than their interpretation of the contract. *Executone*, 26 F.3d at 1325; *see also Timegate*, 713 F.3d at 803.  "'The single question is whether the award, however arrived at, is rationally inferable from the contract.'" *Executone*, 26 F.3d at 1325 (quoting *Anderman/Smith Operating Co. v. Tenn. Gas Pipeline Co.*, 918 F.2d 1215, 1219 n. 3 (5th Cir. 1990)).  A remedy is outside the arbitrators' jurisdiction only where "there is no rational way to explain the remedy handed down by the arbitrator as a logical means of furthering the aims of the contract." *Executone*, 26 F.3d at 1325 (internal quotations omitted).  The Panel determined the lost profits award of $62.9 million was due to SWE for distribution to its Members.  The Panel also noted that the divestiture was necessary to prevent AVIC USA, a member of SWE, from profiting from the breach of the SWE Agreement.  The Court finds the divestiture is rationally inferable from the SWE Agreement, therefore it meets the "essence" test. *See Executone*, 26 F.3d at 1325.  Accordingly, AVIC USA failed to meet

its burden to establish the panel had no authority under the Agreement to award these damages, thereby exceeding their powers and requiring vacatur.

### 3.    Did the Panel Improperly Award Attorneys' Fees to SWE?

AVIC USA contends the Panel exceeded its authority in awarding TEG past and future attorneys' fees along with costs against AVIC USA.  On this point, AVIC USA makes three specific arguments.   First, although the Agreement allows "prevailing Members" to recover court costs, fees, and expenses, including attorneys' fees, AVIC USA argues the Agreement specifically requires the arbitrators to "determine that compelling reasons exist for allocating all or a portion of such costs and expenses to one or more than Disputing Members."  Because the Panel did not make this determination or identify compelling reasons for this allocation, AVIC USA contends the award must be vacated.

In allocating attorneys' fees and arbitration expenses, the Panel cites to Section 13.4 of the Agreement which provides that the "prevailing Members . . . shall be entitled to recover from the other Member or Members . . .  all court costs, fees and expenses of such arbitration, including reasonable attorneys' fees."  AVIC USA does not dispute that the Agreement allows for the recovery of attorneys' fees and expenses.   Instead, AVIC USA takes aim at the Panel's failure to reference Section 13.3(k) which, according to AVIC USA, requires the panel to identify a "compelling"

ORDER – PAGE 34

reason in order to award attorneys' fees and costs against another Disputing Member. This argument attacks the Panel's interpretation of the Agreement and their authority under the specific section addressing allocation of these costs. The Court may not vacate the award on these grounds. *Timegate Studios*, 713 F.3d at 802.

Second, AVIC USA argues the allocated fees and expenses must be from a "Disputing Member" to another "Disputing Member". AVIC USA asserts that SWE was award the damages, but SWE is not a "Disputing Member", and the fees and costs were awarded to TEG, a "Disputing Member"; yet, the Panel made no finding as to whether the costs and fees being allocated were TEG's or SWE's. This argument centers on an interpretation of the Agreement which is within the panel's jurisdiction. This Court will not, and cannot, second-guess the panel's reasons for allocating the attorneys' fees and expenses as it did. Even if the Court disagreed with the panel's interpretation of the Agreement, the Court cannot vacate an award on this basis. *Timegate Studios*, 713 F.3d at 802.

As a final argument on fees and expenses, AVIC USA contends no "Disputing Member" prevailed over AVIC USA. This argument hinges in part on AVIC USA's earlier argument in Section III.B regarding liability based on a rewriting of Section 6.10. The Court has already concluded that argument fails; therefore to the extent this argument relies on vacatur under that Section 6.10 argument, it too fails. AVIC

USA argues alternatively that regardless of that prior argument, TEG is still not a prevailing party because all but one of its claims were dismissed and TEG recovered less than 1% of the damages it sought.   As with the previous arguments, this argument attacks the Panel's interpretation of "prevailing party" as defined and used in the Agreement.   AVIC USA simply disagrees with the Panel's conclusion.   This argument does not provide a basis for vacating the arbitration award.   *See id.*

### 4.    Did the Panel Fail to Account for Any Return on the Investment?

AVIC USA argues any damages award should have included a deduction for AVIC USA's return on investment ("ROI") for wind development projects pursuant to the terms of the Agreement.   AVIC USA contends it was entitled to some amount of ROI deduction for the capital contribution it would have made and because there is no way to determine the specific amount (as it was undefined in the Agreement), the entire award is speculative and in violation of the Agreement's provisions.

As stated previously many times, this Court is very limited it is review of the arbitration award.   The Court may review only "whether the award, however arrived at, is rationally inferable from the contract."   *Executone*, 26 F.3d at 1325 (internal quotations omitted).   "[P]erhaps most importantly, even if the arbitrators incorrectly calculated the damage award, an arbitrator's erroneous interpretation of law or facts is not a basis for vactur of an award."   *Pfeifle v. Chemoil Corp.*, 73 F. App'x 720, 722-

722 (5th Cir. 2003).  The law is clear on this and AVIC USA's argument fails.  Any error in failing to account for an ROI does not provide a basis for the Court to vacate this award.

### 5.     Did the Panel Improperly Assert Jurisdiction Over Derivative SWE Claims?

In its final argument for vacatur, AVIC USA asserts the Panel exceeded its powers in allowing TEG to intervene on SWE's behalf and because SWE was not a proper party to the arbitration, the $62.9 million awarded to SWE must be vacated. Specifically, AVIC USA argues that the Agreement requires a Supermajority (>66%) of Class A membership interests to approve any decision outside the ordinary course of SWE's business.  Because AVIC USA owned 50% of the Class A membership interests, it was necessarily required to agree to SWE's participation in the arbitration, but TEG never sought or secured AVIC USA's consent.  Therefore, SWE's motion to intervene should have been denied and the award should be vacated.

AVIC USA's argument is essentially this—because AVIC USA did not authorize this legal action *against itself*, the Panel exceeded it powers in permitting SWE to intervene, and therefore this award must be vacated.  While this argument is absurd, it ultimately fails just as numerous of its other arguments. AVIC USA objected on these same grounds during arbitration when SWE petitioned to

intervene; the Panel, however, decided SWE was a proper party to the arbitration because "[t]he management committee of SWE took action in accordance with article VI of the SWE Agreement authorizing SWE's claims."  The Panel clearly interpreted the Agreement in ruling that SWE was a proper claimant with standing and was permitted to intervene.  The Court must affirm the award "as long as the arbitrator's decision 'draws its essence' from the contract", resolving all doubts in favor of arbitration.  *Timegate*, 713 F.3d at 802.  AVIC USA failed to meet its burden to prove that the Panel exceeded their powers in "utterly contort[ing] the evident purpose and intent of the parties—the 'essence' of the contract."  *See id.* at 802-803.  The Court concludes the Panel's decision draws its essence from the Agreement, and therefore, the award may not be vacated on these grounds.  *See Anderman/Smith*, 918 F.2d at 1219 n.3.

## IV.   Conclusion

For the reasons previously stated, the Court **GRANTS** the Movants' motion to confirm the arbitration award, and **DENIES** AVIC USA's motion to vacate the

arbitration award.   The arbitration award dated December 21, 2015 is hereby **confirmed** as to Respondent AVIC International USA, Inc.   The Court will issue a separate final judgment.

**SO ORDERED.**

Signed August 9th, 2018.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE